In re Estate of Soulard.

*In Re* ESTATE OF SOULARD; HARNEY, *Administrator, Appellant.*

Division One, December 7, 1897.

1. **Witness:** INCOMPETENCY WAIVED. A party waives his right to object to the incompetency of a witness, who is otherwise competent under the statute, by taking and filing the deposition of such witness.

2. **Gifts:** INTENTION: DELIVERY. To constitute a valid gift among the living, there must be an intention to give and a delivery of the property to the donee, or to someone for him. An intention to give is not sufficient; the intention must be executed by a complete and unconditional delivery. Nor will a delivery be sufficient unless made with an intention to give.

3. **Gifts in Futuro.** A gift can not be made to take effect in the future. Such a transaction would only amount to a promise to make a gift in the future, and being without consideration, is void.

In re Estate of Soulard.

4. **Gifts:** EXECUTED EXPRESS TRUST: CASE STATED. Soulard executed this instrument: "I give to J. S. LaMotte and Mrs. Elizabeth Cates the following described notes and bonds, or any reinvestment of the principal of the same that may be made . . . . . . . amounting to $40,000, share and share alike; that is to say, $20,000 to the use of LaMotte, and $20,000 to the use of Mrs. Cates, reserving, however, for my own use during my life the income and interest from said bonds and notes, and restraining them from making any disposition of the principal of said bonds and notes during my life, and also reserving the right to reinvest any money from the payment of these notes and bonds as to me may seem fit." The notes were delivered to LaMotte, for himself and Mrs. Cates, at the time this instrument was executed and delivered. LaMotte acted as agent for Soulard, and as such collected the interest and reinvested some of the principal, and made monthly statements to Soulard, and accounted to him for the income up to the time of his death. *Held* not a gift, because the transaction was not an executed, absolute, unqualified transfer of the property, the donees taking no present, unconditional title. *Held*, however, to create a valid *express trust* for the benefit of the donees. The fact that the donor retained a beneficial interest in the property during life did not limit or impair the delivery of the notes and bonds, but was simply a part of the declared purposes of the trust.

5. **Trusts:** SUFFICIENCY OF DELIVERY. A delivery is sufficient if made to a third person for the grantee or beneficiary "without reservation and with the intention that it shall take effect from that time and shall operate as a transfer of the title."

6. **Trusts:** RESERVED RIGHT TO INTEREST, AND TO REINVEST. The revised right to the interest on certain notes during the life of the payee thereof, and to reinvest the principal if such notes are paid while he lives, are not inconsistent with the creation of a valid trust out of the principal sum of the notes, for the benefit of the donees. Such reservations are not of the title, but of power coupled with a trust, and are not inconsistent with a complete present transfer of the title.

7. **Creation of Trusts:** SUFFICIENCY OF WORDS USED. It is not necessary in order to declare a trust, that the word "trust" or "trustee," or equivalent words, should be used. If a clear intention to create a trust appears from the language used, that will be sufficient.

8. ———: CONCURRENT ELEMENTS. Four requisites must concur to create a trust: (1) Sufficient words to create it; (2) a definite subject; (3) a definite object; and (4) the terms of the trust should be sufficiently declared.

In re Estate of Soulard.

9. **Wills**: PROBATING: CONTESTS: COSTS AND ATTORNEY'S FEES. The executor of a will is entitled to be reimbursed out of the estate for all necessary expenses incurred by him in good faith in the discharge of his duty in having the will probated and established, and in the performance of this duty he is entitled, therefore, to have the fees for the reasonable services of attorneys paid out of the estate; but the expenses in the circuit court growing out of will contests should be borne by the parties interested in the suit, that is, by the heirs and legatees.

10. **Administrators**: COMMISSIONS ON RENTS. The temporary administrator in a will contest has, under the statute requiring him "to take charge of the property and administer it according to law under the direction of the court," authority to take charge of the land affected by the will, and rent it. Neither the heir nor devisee should collect the rent during such contest. When the will is established the devisee is entitled to have the rents collected off the property that falls to him, paid back to him, less the administrator's commissions.

*Appeal from St. Louis City Circuit Court.*

REVERSED AND REMANDED (*with directions*).

*Walter B. Douglas* and *P. Taylor Bryan* for appellant.

(1) Every person claiming title by gift necessarily admits that up to the time when the gift was alleged to have been made the chattel was the property of the donor. *Dickeschied v. Bank*, 28 W. Va. 360; *Samson v. Samson*, 67 Iowa, 253; *Barnum v. Reed*, 136 Ill. 388. (2) The power of attorney to Mrs. Soulard neither conferred nor purported to confer upon her any authority to give away her husband's property. *Clarke's Lessee v. Courtney*, 5 Peters, 319; *Frost v. Cattle Co.*, 81 Tex. 505; *Bank v. Schaumburg*, 38 Mo. 228. (3) The alleged ratification by Mr. Soulard was written on each instrument of gift under the signature of Mrs. Soulard, and by its terms is confined to the foregoing act, namely, to the signing of the instrument. *Steunkle*

*v. Railroad*, 42 Mo. App. 73; *Hyde v. Larkin*, 35 Mo. App. 365; *Bank v. Gay*, 63 Mo. 33. (4) Since both Mr. Soulard, the principal, and Mrs. Soulard, the so-called agent, were dead at the time LaMotte's testimony was taken, any testimony of LaMotte as to what was said or done by either of them is clearly incompetent. R. S. 1889, sec. 8918; *Banking House v. Rood*, 132 Mo. 256; *Lins v. Lenhardt*, 127 Mo. 289; *Dunn v. Bank*, 109 Mo. 101. (5) In order to constitute a valid gift of personal property it is necessary that the subject-matter be definite and specific. Thornton on Gifts, p. 11; 2 Kent's Commentaries, 439; *Barnum v. Reed*, 136 Ill. 388. (6) The possession of the subject-matter must be delivered to the alleged donee, or to someone for him. An attempted transfer by writing alone will not suffice. *Cochrane v. Moore*, 25 Q. B. D. 57; *Seminary v. Robbins*, 128 Ind. 85; *In re Breton's Estate*, L. R. 17 Ch. Div. 416; *McMahon v. Bank*, 67 Conn. 78; *Giselman v. Starr*, 106 Cal. 651; *Walsh's Appeal*, 122 Pa. St. 177. (7) This delivery of possession must be made in execution of a purpose to give as distinguished from a mere delivery in bailment, as, for example, to donor's agent. *Dunn v. Bank*, 109 Mo. 90; *Tomlinson v. Ellison*, 104 Mo. 105; *Walter v. Ford*, 74 Mo. 195; *McCord v. McCord*, 77 Mo. 166. (8) This delivery must be with the intent on the part of the alleged donor to absolutely pass all present title to the property entirely out of himself, and to irrevocably deprive himself of all control thereof, and dominion thereover. *Dunn v. Bank*, 109 Mo. 90; *Nasse v. Thoman*, 39 Mo. App. 178; *Knapp v. Publishers*, 127 Mo. 53; *Thomas v. Thomas*, 107 Mo. 459; *Basket v. Hassel*, 107 U. S. 602; *Cook v. Lum*, 55 N. J. L. 373; *Beaver v. Beaver*, 117 N. Y. 421; *Yancey v. Field*, 85 Va. 756; *Jones v. Weekly*, 99 Ala. 441. (9) A gift *inter vivos* has no reference to the future. It must pass the entire title *in praesenti; Spencer*

v. *Vance*, 57 Mo. 427; *Tygard v. McComb*, 54 Mo. App. 85; *Sem. v. Robbins, supra; Basket v. Hassel*, 107 U. S. 602; *Young v. Young*, 80 N. Y. 422. (10) Whether the executrix claims that these notes and bonds were a gift passing the legal title to the alleged donees, or whether she claims that they were gifts passing the legal title to LaMotte as trustee for them, the requirements to make the transaction a valid gift of personal property are the same. Perry on Trusts [4 Ed.], sec. 100, p. 93; *Dunn v. Bank*, 109 Mo. 90; *Sem. v. Robbins*, 128 Ind. 85; *McCartney v. Ridgeway*, 160 Ill. 129; *Barnum v. Reed*, 136 Ill. 338; *Withers v. Weaver*, 10 Barr, 391. (11) The alleged gifts in this case were not to take effect until the death of the donor. They were therefore testamentary in character and not valid as gifts *inter vivos*. *Dunn v. Bank*, 109 Mo. 90; *Tygard v. McComb*, 54 Mo. App. 85; *Basket v. Hassell*, 107 U. S. 602; *Barnum v. Reed*, 136 Ill. 388; *Olney v. Howe*, 89 Ill. 556; *Buswell v. Fuller*, 156 Mass. 309. (12) Expenses incurred by an executor for fees paid to counsel for defending in a contest of the will of which he is executor, are not chargeable against the estate in the absence of a legal duty imposed upon the executor to defend such case. 2 Woerner's Am. Law of Adm., sec. 517; *Mumper's Appeal*, 3 Watts & S. 441; *Yerkes' Appeal*, 99 Pa. St. 401; *Shaw v. Moderwell*, 104 Ill. 64; *Andrews v. Andrews*, 7 Ohio St. 143; *In re Parsons*, 65 Cal. 240; R. S. 1889, sec. 13. (13) It is no part of the duty of an executor to collect rents of real property of the testator, and when he does so he should not be allowed to charge a commission against the estate for so doing. R. S. 1889, secs. 129, 222; *Hitchcock v. Mosher*, 106 Mo. 578. (14) Equity can not be successfully invoked to perfect an imperfect gift by creating a trust where the words employed are insufficient of themselves to have such effect. *Richards v. Delbridge*,

In re Estate of Soulard.

L. R. 18 Eq. Case, 11; *McCartney v. Ridgeway*, 160 Ill. 129; *Roth v. Michael*, 125 Ill. 325; *Barnum v. Reed*, 136 Ill. 388; *Young v. Young*, 80 N. Y. 422; *Beaver v. Beaver*, 117 N. Y. 421; *Matthews v. Hoagland*, 48 N. J. Eq. 455; *Marcy v. Amazeen*, 61 N. H. 134; *Pope v. Bank*, 56 Vt. 286.

*Frost & Foy* and *Lubke & Muench* for respondent.

(1) The instruments in this case create an executed express trust, and constitute a valid gift *in praesenti* of the bonds and notes. *Young v. Young*, 80 N. Y. 422; *Pope v. Bank*, 56 Vt. 288; *Barlow v. Loomis*, 19 Fed. Rep. 677; *Davis v. Ney*, 125 Mass. 592; *Stone v. Hacket*, 12 Gray, 227; *Ireland v. Geraghty*, 11 Bissell, 465; *Blanchard v. Sheldon*, 43 Vt. 513. (2) A remainder after a life estate can be created in personal property when conveyed in trust. R. S. 1889, sec. 8837; *Pemberton v. Pemberton*, 22 Mo. 339; *Hayden v. Stinson*, 24 Mo. 182; *Smith v. Bell*, 6 Peters, 78; *Jaggers v. Estes*, 2 Strob. Eq. 344. (3) No particular words are necessary to create a trust. *Seavey v. Seavey*, 30 Ill. App. 625; *Gerrish v. Bank*, 128 Mass. 159; *Uran v. Cates*, 109 Mass. 501; *Estate Thos. Smith*, 144 Pa. St. 438; *Hellman v. McWilliams*, 70 Cal. 449; *Meriwether v. Morrison*, 78 Ky. 572. (4) The restraint in the instruments on the grantees from "making any disposition of the principal of said bonds and notes during my life," is consistent with transfer of title in fee. *Dougal v. Fryer*, 3 Mo. 40; *Van Cott v. Prentice*, 104 N. Y. 45. (5) The reservation by grantor of the right to reinvest any money from the payment of the notes and bonds does not enlarge the life interest before reserved to grantor into a fee, and is not inconsistent with a complete title in grantee subject to the exercise of this right. Thornton on Gifts, p. 435; *Harbison v.*

*James*, 90 Mo. 427; *Russell v. Eubanks*, 84 Mo. 83; *Jarboe v. Hey*, 122 Mo. 341. (6) The reservation by grantor of a life estate is conclusive evidence of the intent to pass title *in praesenti*. *Sneathen v. Same*, 104 Mo. 209; *Williams v. Latham*, 113 Mo. 174. (7) There was a complete delivery of both instruments and notes. *Rumsey v. Otis*, 133 Mo. 85; *Hill v. Stevenson*, 63 Me. 364; *Hamilton v. Armstrong*, 120 Mo. 597; *Meriwether v. Morrison*, 78 Ky. 573; *McCord v. Same*, 77 Mo. 174; *Rinker v. Same*, 20 Ind. 185; *Dresser v. Same*, 46 Me. 68; *Rothenbarger v. Same*, 111 Mo. 1; *Sneathen v. Same*, 104 Mo. 201; *Williams v. Latham*, 113 Mo. 165. (8) Assent of donees, especially minors, is presumed. *Rothenbarger v. Same*, 111 Mo. 1; *Sneathen v. Same*, 104 Mo. 201; *Standiford v. Same*, 97 Mo. 236. (9) Even if grantors had possession of notes or bonds after the gift had been completed, this does not defeat gift: Thornton on Gifts, p. 182, par. 209; *Geraghty v. Ireland*, 11 Bissell, 465; *Van Hesse v. MacKaye*, 62 Hun. (N. Y.) 458; *Brandon v. Dawson*, 51 Mo. App. 237. (10) The court will endeavor to give effect to the grantor's intention. *Bean v. Kenmuir*, 86 Mo. 666; *Fisher v. Nelson*, 8 Mo. App. 90; *McCullock v. Holmes*, 111 Mo. 448. (11) The grantees could be at the same time trustees and *cestuis que trustent*. *Young v. Young*, 68 N. C. 309; *Cummings v. Corley*, 58 Mich. 492; *Love v. Francis*, 63 Mich. 182. (12) The words "to the use of" on the instruments of gift are equivalent to "in trust for," "for the benefit of." *Pugh v. Hayes*, 113 Mo. 424; *Young v. Young*, 80 N. Y. 422; *Donlin v. Bradley*, 10 N. E. 11. (13) A trust may be declared in a fund constantly changing. *Leland v. Culver*, 34 Mich. 418; Beach, Mod. Eq. Jur., secs. 281, 285, 286. (14) LaMotte's testimony was competent. *Tomlinson v. Ellison*, 104 Mo. 105; *Gunn v. Thurston*, 130 Mo. 359; *Dunn v. Bank*, 109 Mo. 101; *Banking House v. Rood*,

132 Mo. 264. (15) After proof of delivery of instruments of gift, and notes and bonds, the burden of proof is upon appellant to invalidate gift. *Tobin v. Bass*, 85 Mo. 654; *Hamilton v. Armstrong*, 120 Mo. 597; *Standiford v. Same*, 97 Mo. 231; *Tyler v. Hall*, 106 Mo. 319. (16) The executor's right to reimbursement out of the estate is made to depend, not upon his success, but simply upon his good faith in incurring the expense. *Williams v. Goude*, 1 Haggards, 610; *Wilkinson v. Corfield*, 6 Prob. Div. 27; *Phillips' Ex'r v. Phillips*, 81 Ky. 328; *John v. Tate*, 7 Humph. 388; *Hazard v. Engs*, 14 R. I. 5, 8; *Douglas v. Yost*, 18 N. Y. Sup. 830.

MACFARLANE, J.—The controversies in this case arose in the probate court of the city of St. Louis on exceptions to the final settlement of the accounts of Joseph Soulard LaMotte as executor under the will of Henry G. Soulard, deceased. LaMotte died prior to the approval of his settlement, and Augusta F. LaMotte was appointed his executrix and as such asked the approval of the settlement. John M. Harney, who after the death of LaMotte was appointed administrator of the unadministered goods of the said Soulard, deceased, filed exceptions to the settlement.

The propositions upon which the exceptions are based are fairly stated by appellant as follows:

*First.* The failure of LaMotte as executor to inventory and account for as property of the Soulard estate the following property, to wit: Fifteen hundred dollars in cash and also certain debenture bonds and promissory notes, the principal of which bonds and notes aggregate $58,500, together with the interest thereon from the date of Mr. Soulard's death.

*Second.* Improper credits taken by LaMotte for sums paid out in attorneys' fees, and other costs of

litigation, which sums were not properly chargeable against the Soulard estate.

*Third.* Improper credits taken by LaMotte for commissions on rents collected and paid out by him as executor, he having no authority to collect rents.

*Fourth.* Improper credits taken by LaMotte as executor in the distribution to himself and his sister, Mrs. Cates, of certain articles of personal property, which under the will were bequeathed to the residuary legatees.

This last named ground of exception, having been decided in favor of the exceptor, need not be here considered. The exceptions were sustained by the probate court, but on a trial in the circuit court, to which the case had been appealed, the exceptions stated in the first three propositions were overruled and the exceptor appealed.

It appears from the record and evidence that Henry G. Soulard died testate in the city of St Louis on the sixteenth day of February, 1891, at the age of about ninety years. At the time of his death he was possessed of property valued at between $400,000 and $500,000, of which more than $100,000 was in personalty consisting of notes and bonds secured on real estate. Mr. Soulard was for many years a married man, his wife dying childless in November, 1888. At about five years of age a niece of Mrs. Soulard was taken into the family by Mr. Soulard and was supported, reared, and educated by him and his wife. This niece first married F. X. LaMotte, with whom she lived in the Soulard household until the death of her husband, in 1868. Of this marriage was born a son, Soulard LaMotte, and a daughter who afterward married Mr. Cates. These two children continued to live in the Soulard family until the death of Mr. Soulard

in 1891. In 1874 Mrs. LaMotte, the widow of F. X. LaMotte, married Gen. D. M. Frost, and bore to him two children, Edith and Harriet. In January, 1885, Henry G. Soulard made and delivered to his wife a general power of attorney authorizing her to transact all his business. After the death of his wife and on the twelfth day of November, 1888, Mr. Soulard made to the said J. Soulard LaMotte a like power of attorney. On the fourth day of October, 1887, Mrs. Soulard executed two instruments of writing, which were duly acknowledged before a notary public, and were as follows:

"St. Louis, October 4th, 1887.

"I, Harriet M. Soulard, by the power vested in me by a general power of attorney dated January 23rd, 1885, and given to me by my husband Henry G. Soulard on the above date, now by the power so vested in me I hereby give to my grandnephew J. Soulard LaMotte and to my grandniece Elizabeth P. Cates, the following described notes and bonds, or any reinvestment of the principal of the same that may be hereafter made: One note made and payable by Hugh J. Carney, as President of the Academy of the Christian Brothers, for fifteen thousand dollars; ten bonds of the Academy of the Christian Brothers for one thousand dollars each, amounting to ten thousand dollars; one note made and payable by James Taussig for fifteen thousand dollars, said notes and bonds amounting to the sum of forty thousand dollars, share and share alike; that is to say, the sum of twenty thousand dollars to the use of said J. Soulard LaMotte, and twenty thousand dollars to the use of Elizabeth P. Cates, reserving, however, for my own use during my life the income or interest from said bonds and notes, and restraining them from making any disposition of the principal of said bonds and notes during my life, and also reserv-

ing the right to reinvest any money from the payment of these notes and bonds as to me may seem fit.

"HENRY G. SOULARD,
"By HARRIET M. SOULARD, Attorney in Fact."

"ST. LOUIS, October 4th, 1887.

"I, Harriet M. Soulard, by the power vested in me by a general power of attorney dated January 23d, 1885, and given to me by my husband, Henry G. Soulard, on the above date, now by the power vested in me I hereby give to my two grandnieces, Edith M. and Harriet M. Frost, the following described notes, or any reinvestment of the principal of the same that may be hereafter made: One note made and payable by Asby A. Chouteau for the use of thirteen thousand dollars; one note made and payable by James A. Conlon for three thousand and five hundred dollars, and the sum of three thousand five hundred dollars out of two certain notes made and payable by Louis Ottenad, making in all the sum of twenty thousand dollars, share and share alike; that is to say, ten thousand dollars to the use of Edith M. Frost and ten thousand to the use of Harriet M. Frost, reserving, however, for my own use during my life the income or interest from said notes, and restraining them from making any disposition of the principal of said notes during my life, and also reserving the right to reinvest any money from the payments of these notes as to me may seem fit.

"HENRY G. SOULARD,
"By HARRIET M. SOULARD, Attorney in Fact."

After the death of his wife, and on the fourteenth day of November, 1888, Mr. Soulard signed and acknowledged before Francis Valle, a notary public, a written indorsement on each of the said writings as follows: "I, Henry G. Soulard, do hereby declare that I am cognizant of the foregoing act of my attorney

in fact, my wife, Harriet M. Soulard; that it has my concurrence; that I do freely ratify the same. As witness my hand this fourteenth day of November, 1888.''

Previous to the trial the deposition of J. Soulard LaMotte was taken by a commissioner by agreement, the parties stipulating that the testimony so taken should be read on the hearing ''with the same effect as if the same had been taken before a notary public of the county, subject only to objection for incompetency, immateriality, irrelevancy, or the leading character of questions.'' On the trial the exceptor read in evidence portions of this deposition. The remainder was offered by the administratrix. The exceptor objected on the ground that both Mr. and Mrs. Soulard were dead, and the evidence tended to prove a contract or cause of action to which they were parties. The objection was overruled and an exception was saved.

That the notes and bonds specified in the two instruments of writing executed by Mrs. Soulard were never inventoried or accounted for by the executor, is not disputed. On the contrary, it stands admitted that they were, after the death of Soulard, delivered by his executor to those respectively to whom the writings purported to give them. The failure to inventory and account for these notes and bonds is justified by the executor on the ground that by the settlements and the acts of the parties they became, at the death of Mr. Soulard, the property of the donees therein named.

LaMotte testified that on the day Mrs. Soulard executed the instruments they, together with all the notes and bonds described therein, were delivered to him; that at the time Mr. Soulard had control of the safety deposit box in which he kept his valuable papers, LaMotte had access to this box, kept his own papers in it, and on that afternoon or the next morning he de-

posited these notes and bonds in it. Mrs. Soulard died November 8, 1888. On the day after her death La-Motte rented a safety deposit box for his own use, in which he deposited all these papers. On the ninth day of November, 1888, Mr. Soulard executed the indorsements found on the written declarations previously made by his wife. The circumstances attending the ratification by Mr. Soulard of the act of his wife, as detailed by LaMotte and Valle, the notary, are about these: Soulard was in doubt whether the attempted transfer by his wife of the notes and bonds would be effectual to accomplish the purposes expressed therein, and he took the advice of his counsel, Colonel Gantt, who prepared the written ratifications, and directed their indorsement on the papers. This was done, and Mr. Soulard sent for the notary public, before whom the indorsements were signed and acknowledged. The papers were thereupon delivered to LaMotte, who retained them until the death of Mr. Soulard.

On the twelfth day of November, 1888, Mr. Soulard made to LaMotte a power of attorney which contained like power as the one previously held by his wife. Under this power of attorney LaMotte, from March, 1889, acted as the agent of Soulard in the transaction of most of his business. Previous to that time the business had been mostly transacted by William H. Shaw as agent. LaMotte testified that previous to his appointment as agent, whenever the interest on any of these notes and bonds became due the interest notes were delivered to Mr. Soulard or his agent by whom they were collected. After his appointment as agent he collected the interest and accounted to Mr. Soulard for it. Notes that fell due prior to LaMotte's agency were collected and reinvested by Soulard or his agent, but according to the evidence of LaMotte the new notes were given into his possession and were retained by

him until Mr. Soulard's death, when they were delivered to the donees.

I. Many of the facts bearing upon the conduct of the parties and the management of the business connected with the notes and bonds in question are furnished by the evidence of the witness LaMotte. The instruments of gift, as well as the notes and bonds, were delivered to LaMotte. The written ratifications of the acts of the wife and attorney of Mr. Soulard, tending to prove an intention to give the notes and bonds to the parties designated in the writings, were made to LaMotte. It is evident that the contract or cause of action relied upon by the executrix was made with LaMotte for himself and as representative of other donees. Mr. Soulard, one party to the cause of action, being dead, LaMotte, under the statute and the construction given it by this court, would be clearly incompetent to testify as a witness. But the stipulation, under which the deposition of this witness was taken, after naming a commissioner, and the time and place for taking the testimony, has this agreement: "And that the said testimony shall be read at any proper hearing of said matter with the same effect as if the same had been taken before a notary public of said county, subject to objection for incompetency, irrelevancy, or the leading character of questions." It might well be questioned whether the incompetency of the witness was not waived by this stipulation. The reservation of the right to object is limited to the incompetency of the testimony of the witness and does not, under a fair construction of the stipulation, extend to the incompetency of the witness to testify.

But we do not deem it necessary to pass upon this point, as we are of opinion that the incompetency of the witness was clearly waived by the act of the exceptor in reading a portion of the deposition himself, and that

before it had been offered by the executrix. It was recently held by this court that a party waives the right to object to a witness on the ground of his incompetency under the statute, by taking and filing his deposition in the cause though he offered to read no part of it on the trial. *Ess v. Griffith*, 139 Mo. 322; *Tomlinson v. Ellison*, 104 Mo. 114. Surely a party would not be allowed to admit the competency of a witness to testify to such matters as are favorable to him and then to deny his competency to testify to other matters which are unfavorable. It is said in the case first cited: "The living party is not made absolutely incompetent as a witness, but 'he shall not be permitted to testify in his own favor.' He may be called as a witness by the administrator, and compelled to testify, but when so called he is entitled, on cross-examination, to testify in his own favor. R. S., sec. 8920. In such case the incompetency is waived, whether his evidence be given at the trial or by deposition. Sec. 8924." This opinion is controlling. The administrator read portions of the deposition and the opposite party had the right to read the remainder. The parties seem to recognize the justice of this rule by the terms of the stipulation.

II. The most casual reading of the declarations made by Mrs. Soulard and the ratification afterward made by her husband, leaves no doubt of the intention on their part that the principal of the notes and bonds described, and their reinvested proceeds, should become the property respectively of the persons therein named as donees. Courts are ever desirous of carrying out and effectuating the intention of parties as manifested by their agreements or declarations of trust, and will do so whenever it can be done consistently with the established rules of law.

To constitute a valid gift *inter vivos*, there must

be an intention to give and a delivery to the donee, or to someone for him, of the property given. An intention of the donor to give is not alone sufficient; the intention must be executed by a complete and unconditional delivery. Neither will a delivery be sufficient unless made with an intention to give. The transaction must show a completely executed transfer to the donee of the present right of property and the possession. The donee must become the owner of the property given. *Dunn v. Bank*, 109 Mo. 97; *McCord v. McCord*, 77 Mo. 166; *Walter v. Ford*, 74 Mo. 195; *Tomlinson v. Ellison*, 104 Mo. 105.

A gift can not be made to take effect in the future. Such a transaction would only amount to a promise to make a gift in the future, and being without consideration is void. *Spencer v. Vance*, 57 Mo. 429; *School District v. Sheidley*, 138 Mo. 672.

Without reviewing the evidence in detail, a summary of which is given in the statement, we find from it these conclusions of fact which we regard as well established. At the time Mrs. Soulard executed the settlements she delivered them and also the notes and bonds to LaMotte, but explained to him at the time "that he would not have any of the income, or anything of that sort, during Mr. Soulard's life." That soon after receiving the notes, bonds, and settlements, LaMotte placed them for safe keeping in a safety deposit box controlled by Mr. Soulard in which he kept his valuable papers. LaMotte and Mrs. Soulard had access to this box and the former kept his own papers in it. Mr. Soulard was, at the time, old and infirm, and seldom, if ever, opened the box. His business was transacted by his wife and an employed agent and clerk. On the death of Mrs. Soulard, LaMotte rented a safety deposit box, to which he transferred the papers, notes, and bonds. At the time the indorsements on the set-

tlements were executed by Mr. Soulard the notes and bonds were in the box controlled by LaMotte. The interest on the notes and bonds were collected by Mr. Soulard, or his agent, until his death. LaMotte was appointed agent in March, 1889, and continued to act as such until the death of his principal. Several of the notes matured during the lifetime of Mr. Soulard, and they were collected, and the proceeds thereof were reinvested under the direction of himself or agent. From the time of the delivery of the notes and bonds to LaMotte a separate account was kept of their collection and reinvestment. Of this Mr. Soulard was advised by monthly statements made him by his agents. The language of the settlement to LaMotte and Mrs. Cates is: "I give to [naming the donees] the following described notes and bonds, or any reinvestment of the principal of the same that may hereafter be made," [Here follows a specific description of the notes and bonds] "amounting to the sum of forty thousand dollars, share and share alike; that is to say, the sum of twenty thousand dollars to the use of J. Soulard LaMotte, and twenty thousand dollars to the use of Elizabeth P. Cates, reserving, however, for my own use during my life, the income and interest from said bonds and notes, and restraining them from making any disposition of the principal of said bonds and notes during my life, and also reserving the right to reinvest any money from the payment of these notes and bonds as to me may seem fit."

Though the evidence shows a delivery of the notes and bonds to LaMotte and also a clearly expressed intention to give them to the donees named, yet the transaction does not amount to an executed gift, under the foregoing rules of law. The transfer to the donees is not absolute and unqualified. The right of control

reserved by the donor is inconsistent with absolute ownership by the donees. The donees took no present, unconditional title to the notes so long as the donor retained control over them and their proceeds. It is clear that the donor intended that the gift should not become perfect until his death. The disposition attempted to be made of the notes and bonds and their proceeds can not therefore be enforced as a gift.

III. Can the disposition of the property be enforced as an executed express trust? This depends, in the first place, upon the intention of the donor; that is to say, if the donor intended to dispose of this property as a gift, but failed in that purpose for any reason, he can not have the imperfect gift enforced as an executed voluntary trust. An imperfect gift will not be converted into a declaration of trust on account of the imperfection. There must therefore have been an intention to create a trust before one can be declared and enforced. This principle is well expressed by RAPALLO, J., in *Young v. Young*, 80 N. Y. 437, who says: "It is well settled that equity will not interpose to perfect a defective gift or voluntary settlement made without consideration. If legally made, it will be upheld, but it must stand as made, or not at all. When, therefore, it is found that the gift, which the deceased attempted to make, failed to take effect, for want of delivery or a sufficient transfer, and it is sought to supply this defect and carry out the intent of the donor by declaring a trust which he did not himself declare, we are encountered by the rule above referred to. It is established as unquestionable law that a court of equity can not by its authority render that gift perfect which the donor has left imperfect, and can not convert an imperfect gift into a declaration of trust, merely on account of that imperfection."

As has been said, the transaction in question does not amount to a perfect gift. That is evident from the terms of the settlements themselves. Yet it is evident also that the donor intended to make a complete disposition of the property, by which the income should be paid to himself during life; the proceeds of the notes, when paid, should be reinvested under his direction, the beneficiaries should have no power to dispose of the principal during his life, but at his death they should have the principal fund absolutely, whether then in bonds, notes, or money. We must assume that the donor intended to do what these settlements show he attempted to do. If the settlements, together with what was done under them, amounted to a valid executed trust, then they should be carried out in favor of the beneficiaries.

These settlements are without consideration from the beneficiaries of the principal fund. The attempted trusts are voluntary, and unless fully executed they will not be enforced. If not executed, they would only be voluntary executory agreements for the creation of the trusts which a court of equity would not perfect and enforce. A voluntary trust must be created by the donor himself, and not by the court. In *Stone v. Hackett*, 12 Gray, 227, Bigelow, J., says: "A voluntary gift or conveyance of property in trust, when fully completed and executed, will be regarded as valid, and its provisions enforced against all persons except creditors or *bona fide* purchasers without notice. It is certainly true that a court of equity will lend no assistance toward perfecting a voluntary contract or agreement for the creation of the trust, nor regard it as binding so long as it remains executory. But it is equally true that if such an agreement or contract be executed by a conveyance in trust, so that nothing remains to be done by the grantor or donor to complete

the transfer of the title, the relation of trust and *cestui que trust* is deemed to be established, and the equitable rights and interests arising out of the conveyance, though made without consideration, will be enforced in chancery." These principles seem to be well established. Thornton on Gifts, sec. 412, and cases cited; 8 Am. and Eng. Ency. of Law, 1233, and cases cited; see, also, note to *Williamson v. Yager*, 91 Ky. 282.

Counsel for appellants urge with much earnestness and ability several objections to treating this transaction as an executed voluntary trust. The importance of the subject and the force of the argument of counsel make a consideration of these objections proper.

It may be said, in the first place, that the general power of attorney held by Mrs. Soulard gave her no authority to give away the property of her principal. The express authority given excludes, as a general rule, all implied authority to do something beyond what is expressed. "But he who may authorize in the beginning, may ratify in the end." *Bank of Trenton v. Gay*, 63 Mo. 39. The ratification of Mr. Soulard to the settlements made by his wife was complete. It was indorsed upon the instruments themselves beneath his name which had been signed by his wife. He declared that he was cognizant of the foregoing act of his attorney in fact, that it had his concurrence, and he fully ratified the same. It can not fairly be said as contended that this ratification was only of the act of signing the settlements of his wife. He ratified and intended to ratify the act of his attorney. If her act, as manifested by the writing, was intended to create a trust in the notes and bonds described, that act, and whatever had been done to perfect the trust, was ratified. We must therefore treat the entire transaction of the agent as the act of Mr. Soulard, the principal. The inquiry

then is, whether the settlements and what was done under them was sufficient to place the bonds and notes in trust for the use of the beneficiaries therein named.

It is well settled that no particular words are necessary to declare a trust. If the language sufficiently expresses an intention to create a trust, that will be sufficient. To this proposition we believe all authorities agree. Perry on Trusts, sec. 82; Flint on Trusts, sec. 34. In order to render a sufficiently expressed voluntary trust valid, it is only necessary that the trustor should have done everything which could have been done, the character of the property comprising the trust being considered, to transfer the property to the trustee in such mode as will be effectual to pass the title. This, it is said, he may do, "by actually transferring the property to the persons for whom he intended to provide and the provisions will then be effectual, and it will be equally effectual if he transfers the property to a trustee for the purpose of the settlement, or if he declares himself a trustee for those purposes." *Milroy v. Lord*, 4 D. G. F. & J. 264; *Smith's Estate*, 144 Pa. St. 436.

The property comprising the trust was delivered to LaMotte, on the execution of the settlements, who held them for himself, and for the other beneficiaries, until the death of the donor. This was a sufficient delivery to each of the beneficiaries named. A delivery is sufficient if made to a third person for the grantee or beneficiary, "without reservation and with the intention that it shall take effect from that time and shall operate as a transfer of the title." *Sneathen v. Sneathen*, 104 Mo. 201; *Hamilton v. Armstrong*, 120 Mo. 597; *Rothenbarger v. Rothenbarger*, 111 Mo. 1. The settlements being beneficial to the donees, acceptance will be presumed, particularly as to the two Frost girls, both of whom at the time were infants. In *Worth v. Case*, 42 N. Y.

367, the court says: "There is no doubt that a delivery of a deed or note to one person in favor of and for the benefit of another constitutes a valid and binding delivery as against the party who delivers it, whether the party in whose favor it is delivered is aware of it or not; and for the purpose of protecting his interests the law holds the party receiving the delivery as his trustee and makes his acceptance of it the acceptance of the beneficiary." This statement of the law is in accord with the decisions of this court cited above.

By the delivery of the settlements, together with the notes and bonds, the donor divested himself of the legal title and vested it in the donees. It is true, he retained a beneficial interest in the property, the right during his life to the interest and income therefrom, and reserved the right to direct the reinvestment of the proceeds. But these are parts of the declared purposes of the trust. The trustee could as well make the income payable to himself for life as to any other party.

In *Stone v. Hackett, supra,* the income of the property was to be paid to the donor during life, and upon his death the principal was to be divided among various charities, and the validity of the trust was upheld. In *Davis v. Ney,* 125 Mass. 590, a voluntary trust was upheld which allowed the donor to receive, not only the income, but such part of the principal as she might need during her life.

Nor do we think the reserved right to direct the reinvestment of the notes inconsistent with a valid trust. The reservation did not affect the title in the donees or divest them of their legal and beneficial interest. As the trust required the income of the fund to be paid to the donor, the reservation of the right to direct the reinvestments was a reasonable provision for the protection of his equitable rights. The reservation was not of title, but of power coupled with the trust,

and is not inconsistent with the complete transfer of the title *in praesenti*. Thornton on Gifts, sec. 435; *Van Cott v. Prentice*, 104 N. Y. 45; *Harbison v. James*, 90 Mo. 427.

It was not necessary in order to declare a trust, that the words "trust" and "trustee" or equivalent words should have been used. If a clear intention to create a trust appears from the language used, the declaration will be sufficient, though technical words be not used.

Three things, it has been said, must concur to raise a trust: "Sufficient words to create it, a definite subject, and a definite object; and to these requisites may be added another, viz., that the terms of the trust should be sufficiently declared." Bispham's Eq. 65; *Cruwys v. Colman*, 9 Ves. 323; *Smith's Estate, supra.* All these requisites are found in these declarations. It is a voluntary trust and the words "I give" are appropriately used as indicating a transfer of the property to the donees. Property can be as effectually transferred by gift as by sale, and the word give is as expressive of a transfer of title as the word sell. The subject of the trust is specifically described. The objects of the trust are clearly expressed. The language used sufficiently declares the trust. The notes and bonds described are given to the donees, the interest and income is to be paid to the donor during his life, and at his death the legal and equitable title to the principal becomes complete. The declarations, and the property comprising the trust, were delivered to the donees and the legal title at once became vested in them subject to the declared trusts. The disposition of the property was not in its nature testamentary, for it took effect immediately and was not postponed to the testator's death.

The intention of the donor in the disposition of

this property is perfectly clear, and no established rules of law prevent the courts from carrying it out.

IV.   As stated, Henry G. Soulard died testate and childless.   By his will he devised to the said LaMotte and his sister Mrs. Cates specific real estate.   The residue of his estate he devised to his legal heirs. After the probate of the will in the probate court, and the due qualification of LaMotte as executor, a suit was commenced in the circuit court by certain of the residuary legatees contesting the validity of the will. LaMotte and Mrs. Cates, as devisees under the will, were made defendants in this suit.   This suit, after a trial had commenced, was dismissed by contestants, and the will was duly established.   LaMotte was not an heir of deceased, but was devisee under the will of a considerable portion of his real estate and was appointed executor.   When the suit contesting the will was instituted LaMotte was suspended from his trust, as provided by statute, and the St. Louis Trust Company was appointed administrator *pendente lite*.   LaMotte employed and paid attorneys to defend the suit and paid other necessary expenses of making the defense. An allowance of these items of expenses, amounting to about $3,700, was asked in the settlement.   As to these items the settlement was approved by the circuit court and the correctness of its ruling is here questioned.

The question then is, whether the executor of a will, who is also a devisee under it, and whose interest depends entirely upon its validity, is entitled to reimbursement from the assets of the estate for sums paid to attorneys, for other expenses paid, in defending a statutory suit contesting the validity of the will, he being himself a party to the suit.

The authorities are conflicting on this question. From them Judge WOERNER reaches the conclusion that "it is the duty, or at least the privilege, of the

person named as executor in a paper purporting to be a last will, to propound the same for probate in the proper court; but the executor is not bound to become a party to an issue of *devisavit vel non* unless he be secured for the expenses by the persons interested in the will." But he says: "If the will is established, the costs and counsel fees, being chargeable against those who are benefited by the litigation, may be charged against the estate if it go to the parties so benefited, otherwise the executor's remedy is by action for contribution." 2 Woerner, sec. 517. "The executor," says Redfield, "is presumed to have the custody of the will, and he is the only person who can, in the first instance, properly prove the same." 3 Redf. on Wills, 8. In *Bradford v. Boudinot*, 3 Wash. C. C. 122, the court say that the executor, believing the paper under which he acts is the last will, is authorized, and it is his duty, to support the first probate and he is entitled to retain the expenses of the litigation out of the estate. In speaking of the duties of the executor, the Supreme Court of *Virginia* says: "He is the representative of the will and of all interests created by it. . . . . . . . It is therefore his right and his duty to obtain for the instrument the sanction prescribed by law." *Wills v. Spraggins*, 3 Gratt. 555. "It is the privilege," says the Supreme Court of *Alabama*, "if not the duty, of one named as executor of a paper purporting to be the last will and testament, to propound it for probate. If he have no knowledge, or reasonable ground on which to predicate a well grounded suspicion against the legality of the will, and propound the paper in good faith, he but carries out the intention with which he was appointed. Any reasonable costs and expenses incurred by him in the honest endeavor to give effect to the will is a proper charge on the estate in his hands." *Henderson v.*

*Simmons*, 33 Ala. 299. The Supreme Court of *Rhode Island*, in the case of *Hazard v. Engs*, 14 R. I. 6, held that on an appeal from a decree submitting a will to probate, the person nominated as executors are entitled, acting in good faith, to prosecute the probate in the appellate court at the expense of the estate. The court says in conclusion: "We think the expenses reasonably incurred by the executor in prosecuting the probate are to be regarded as necessary expenses incident to administration." See, also, *In re Lewis*, 35 N. J. Eq. 99; *Compton v. Barnes* 4 *Gill*, 55.

The courts of *Pennsylvania* have adopted a different rule, holding that the quantum of the estate is not affected whether there be a will or not, and the result of the contest not affecting the estate, those interested in the contest should bear the expenses, and not the estate. *Mumper's Appeal*, 3 Watts & S. 441; *Yerkes's Appeal*, 99 Pa. St. 401. The Supreme Court of *Ohio* follows the Pennsylvania cases, though in the case under consideration the judgment of the court was against the validity of the will. The court say: "We find no authority to sustain the position that a party acting as trustee is bound to defend the relation of trustee whenever the rightful existence of that relation is assailed or called in question; although, should he do so, and do it successfully, it seems he would in that case be entitled to charge his proper expenses against the trust estate; and for the reason that his expenditure ensures to the benefit of the *cestui que trust*." Still the court says: "We can see no good reason, on principle, why he should be held bound to assume the burden of defense in the contest of will under which he acts." The court is of the opinion that those claiming under the will are the proper parties to defend it. *Andrews v. His Administrator*, 7 Ohio St. 151. It is held in *California* to be no part of the duty of an

administrator to contest the validity of a will, offered for probate after his appointment and he will not be allowed for expenses incurred therein.   In *Illinois* it is held that moneys expended by an executor in defending a suit to contest the validity of a will, in behalf of the personal interests of the devisees named in the will, in which suit the will is set aside, are not proper credits to be allowed against the estate.   *Shaw v. Moderwell*, 104 Ill. 65.

An executor represents his testator, not only in executing the will after its probate, but in having it probated.   He is appointed on account of the confidence reposed in him and it is his duty to do everything necessary to carry it into execution.   This duty includes that of propounding the will for probate, for it can not be executed until it has been properly adjudged to be the will of the testator.   The executor acts, not only in the capacity of a trustee of the estate, but he represents the testator in carrying out his will. It is therefore clearly the duty of an executor to obtain for the will in the first instance, the sanction of the law which is necessary to make it effective.   In performing that duty he acts in the capacity of a representative of his testator and should of right be reimbursed out of the estate for all expenses incurred in good faith in the discharge of this duty, whether the will be established or rejected.   That the advice and services of attorneys are proper items of expense in the first probate of the will, can not reasonably be doubted. Indeed, such expenses are fairly included under the statute which authorizes the allowance to executors of all reasonable charges for "legal advice and services." R. S. 1889, sec. 222.

What is here said refers to the probate of wills in common form, by probate courts, where no notice to parties interested is required.   In case the probate is

contested in the circuit court, under the provisions of section 8888, and the general practice act (art. 1, ch. 33) all parties interested, either as heirs of the deceased, or as beneficiaries under the will, are required to be made parties. *Eddie v. Parke's Ex'r*, 31 Mo. 514; *Rodgers v. Dively*, 51 Mo. 194.

"Under our law," it is said, "the proceeding to contest a probated will is in the nature of an appeal and a trial *de novo*. There can be no doubt that it devolves upon those who claim under the will to show that it was duly executed and attested, and that the testator was of requisite age. *Norton v. Paxton*, 110 Mo. 461. It is said in another case: "The *onus* is on the proponents of a will, in a contest of this character, to prove its proper execution and attestation, and also that the testator was of proper age and of sound mind. When these facts are shown, a will *prima facie* valid is established, and it then devolves upon those attacking its validity to prove fraud or undue influence if either is charged." *Maddox v. Maddox*, 114 Mo. 35.

The question then is, what are the duties and privileges of an executor in case the validity of the will, after its formal probate, is contested. The liability of the estate for his expenses depends upon the way in which this question is solved. The statute evidently contemplates a suit between those claiming under the will and those who consider themselves injured by it. In *Eddie v. Parke, supra*, the executor alone was made a party defendant. The devisees were not made parties plaintiff or defendant, and on that ground a demurrer to the petition was sustained. The court says: "The only parties interested in the estate are the children of James and Elizabeth Eddie; yet neither of them are made parties to the proceeding, though the very object of the suit is to divest them of the property devised to them by their grandfather. No decree or

judgment under such circumstances could have any force or effect, for a judgment is only operative against those who are made parties to the suit." 'The technical contest in such statutory proceeding is over the validity of the will, but the ultimate object, the real object, is to determine the rights of the parties to the property. The estate is neither increased nor diminished by the result, and the executor is only interested in seeing that the formal proof of the due execution of the will is made. I am unable to see any good reason why an executor should be required to assume the burden of litigation between the parties directly interested. The estate itself is not to be affected by the result and all parties interested in the property devised are parties to the suit.

The contest being between the parties directly interested, they, and not the estate, should bear the expenses of the litigation. Any other rule might operate ruinously to estates, and is contrary to the manifest policy of our law. If the expense of the contestants is to be paid out of the estate, they would have nothing to lose and everything to gain by the contest. There would be no limit to the expense the parties might incur short of the value of the estate itself. The entire estate could therefore be swallowed up in the litigation and the contestants, if successful, would reap a barren victory. A premium to contest the will would thus be given to parties who might be displeased with the disposition the testator had made of his property. But few unsatisfactory wills would escape a contest. A rule leading to such results would be clearly contrary to the policy of our law. Under the statutes and laws of this State, a successful party to a suit is generally only entitled to his taxable costs as expenses, and no reason can be seen for a different rule in these cases. The case is not at all analogous to one affecting an

estate in the hands of a trustee. The trusteeship of the executor is suspended during the litigation, and he has no power over the estate and no duty to perform in respect to it other than what he derived from his mere nomination by the testator. It is also held under this statute, as has been seen, that the devisees claiming under a will must be made parties, or their interests will not be affected by the judgment, and this, though the executor be a party. The clear inference is that the executor is not required to assume the burden of the litigation and does not represent the beneficiaries under the will. The statute authorizes a contest to be instituted to establish a will that has been rejected by the probate court. The executor is not required to commence this contest, whatever his privilege may be. It may be instituted by any person interested. If upon such a contest the will is again rejected, it could hardly be said that the estate should pay the expenses.

Finally, the statute requires an issue to be made up, "whether the writing produced be the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court." (Sec. 8888.) An ordinary jury trial is thus provided, one party affirming and the other denying the validity of the instrument in question. The court has the right, after verdict, to grant a new trial, "as in other cases," and either party has the right to appeal. (Sec. 8889.) It could not have been intended that the estate should pay the expenses while the parties control the proceedings.

It is true, generally speaking, that in case the will is established by the contest, it could make no particular difference whether the expenses of the parties maintaining the will were paid directly by the parties who claim under it, or out of the estate which they will ultimately receive. But that is not always so, as is illustrated by this case. LaMotte and his sister are devised

specific real estate, and the residue is left to the heirs of the testator. The residuary legatees are the contestants. If the expense of defending the will be paid out of the estate, the entire burden will fall upon the residuary estate, and consequently upon contestants. While it would have been the duty of the executor to propound the will for probate, and in statutory contests to make formal proof of its due execution and attestation, if no one else undertook that duty, yet the expense of trying the matters contested should be borne by the parties interested in the result. LaMotte was not only executor, but a devisee under the will, and largely interested in its establishment, and we assume that the expense incurred by him in the litigation was in behalf of himself and sister, and none of it should be paid out of the estate.

In allowing these items of expenses we are of the opinion the circuit court committed error.

V. Objection is made to commission allowed the executor on rents of real estate collected by the administrator *pendente lite*. The item, as it appears in the settlement, is:

"March 24, 1893, by two thirds bal. of 5 per cent com'n (divided with St. Louis Trust Co.) adm'r. *Pend. Lite*, 1313.92."

It appears that an arrangement was made between LaMotte and the trust company that the latter, while acting as administrator *pendente lite*, should pay to the former two thirds of the commission on rents of real estate. The real estate upon which rents were collected included that devised to LaMotte, but it does not appear what proportion of the rents were derived therefrom.

Under the Missouri law of administration the executor or administrator has nothing to do with the renting of real estate unless authorized by the probate court, or unless the will so directs. The real estate

descends to the heir or passes to the devisee and not to the executor or administrator. But in case the representative assumes to act without authority he is bound as such to account for the rents collected. He and his securities are estopped to deny his authority. *Lewis v. Carson*, 93 Mo. 591.

The temporary administrator, while in charge of the estate, acts in the character of a receiver and should take charge of all the property, the right to which may be affected by the contest, whether real or personal, and preserve it for those who may be entitled to it at the end of the suit. The statute requires the temporary administrator "to take charge of the property and administer the same according to law under the direction of the court." R. S. 1889, sec. 13. The statute is broad enough, we think, to include the real estate, the title of which is indirectly in controversy and depends upon the result of the contest. If the heir or devisee should collect the rents, the other would have no security for its return in case the judgment should entitle him to it. The trust company, while acting as administrator, had the right to collect the rents on the real estate and was entitled to the commission allowed by law on all sums collected. It had the right to divide the commission as it saw fit. Yet the devisee was only entitled to the net rents, less the entire commission, on the property devised to him. When the will was established La-Motte was entitled to have the rents collected on his property paid back to him, less the five per cent commission. He should not have the entire rents paid to him and also charge the commission thereon against the estate.

The judgment is reversed and cause remanded with directions to correct the settlement as herein indicated and approve it as corrected. All the judges of this division concur.