Bowman, J.
This case is submitted to the court on exceptions to the account of Irma C. Ricker^ executrix of William L. Curry, deceased.
*50 The exceptions aré to two items of credit claimed by the executrix in her account for fees and expenses paid attorneys for their services in successfully defending an action to contest the will of said deceased, one item representing the payment to Judge Elam Fisher and Lowry & King, and the other payment to Gottsehall & Turner. They were disallowed by the probate court and executrix appeals.
Said services were performed by said attorneys because employed to do so. The contract with Judge Fisher and Lowry & King is in writing; that with Gottsehall & 'Turner rests wholly in parol. It is established by the evidence, however, that the parties who signed the written contract with said attorneys authorized the employment of Gottsehall & Turner upon the same terms and conditions as Judge Fisher and Lowry & King save only as to amount or rate of compensation.
It is conceded that the payments to said attorneys were a reasonable and proper compensation for their services. The exceptors insist, however, that these payments are not proper items of credit in said account because the contract does not provide for their payment by the executrix, and that it was beyond her power to bind the estate therefor. •
The contract in writing is signed by said Irma C. Ricker personally and as executrix, and it is conceded that there is no provision therein that said compensation to said attorneys should be allowed and paid out of the estate. The executrix contends, however, that the parties entered into said contract with said attorneys with the distinct, collateral understanding and agreement, that if successful in said contest the amount they obligated themselves to pay said attorneys would be allowed and paid out of the estate.
The contract being in writing, the court is bound by its terms, and upon familiar principles can not, therefore, consider the uncontradicted parol evidence offered by the executrix in support of her claim aforesaid.
'This evidence is also in direct conflict with the collateral written contract between the parties employing said counsel, in which it is agreed that if the will is sustained the amount so agreed *51 to be paid said counsel is to be contributed and paid by them in fixed proportions as stipulated therein.
But if proper for the court to consider this evidence and if said counsel were employed by the executrix pursuant to such understanding, she did not bind the estate for their payment, for she may not do so by an executory contract and thus create a liability not founded upon a contract or obligation of the testator. If the services rendered under such employment were important and valuable and for the benefit of the estate, the law contemplates that she will pay the value thereof and be reimbursed by receiving credit for the amount thus paid in the settlement of her account. Thomas v. Moore, 52 O. S., 200, 204, 206.
Passing, then, the contract with said attorneys as creating no liability against the estate, the question is, what are the duties and privileges of the executor in case the validity of a will is contested, and under what circumstances may an executor be allowed credit in his account for the services of attorneys employed by him in the contest of a will?
Sections 12079, et seq., óf the General Code, provide for an action to contest a will, and contemplate a suit between' those claiming under the will and those who consider themselves injured by it. Only a person interested in a will may contest it, and all devisees, legatees and heirs of the testator and other interested persons, including the executor or administrator, must be made parties to the action. An issue must be made up “whether or not the writing produced is the last will or codicil of the testate,” which shall be tried by a jury.
The contest, therefore, is a statutory proceeding in which the contestant or plaintiff denies, and the defendants affirm, the validity of the will. The parties control the proceedings and the estate is not affected by the result. As said by Macfarlane, J., in In re Estate of Soulard, 141 Mo., 642, speaking at page 670:
“The technical contest in such statutory proceeding is over the validity of the will, but the ultimate object, the real object, is to determine the rights of the parties to the property. The estate is neither increased nor diminished by the result, and *52 the executor is only interested in seeing that the formal proof of the due execution of the will is made. ’ ’
Under ordinary circumstances, those claiming under the will are the proper parties to defend it when assailed, and the executor is not called upon to do so, and as a general proposition he has no right to espouse the cause of the parties to either side, and, engage in the contest and charge the estate with the expense thereof. Alexander’s Estate, 211 Penn., 125.
Therefore, it is held in Andrews v. Andrews, 7 O. S., 143:
“An executor is not bound to assume the burden of the defense of a contest of the will by the heirs-at-law, but may properly -throw the same upon the legatees or devisees.’’
And, further, that:
“The executor is not entitled, when the will is adjudged invalid, to charge the estate, in his settlement account, with the expense of maintaining such defense.”
But, as said by Brinkerhoff, J., speaking for the court in that case at page 151:
“Should he do so, and do it successfully, it seems he would, in that case, be entitled to charge his proper expenses against the trust estate; and this for the reason that his expenditure inures to the benefit of the cestui que trust.”
This case was followed and approved by the Supreme Court in the unreported case of In re Estate of Daniel Laws, Dec’d, 17 Bull., 80; 18 Bull., 198 (10th O. Dec., 39).
The facts in these cases are significant and deserve special attention. In both cases the action was brought by the heirs-at-law of the testator whom he had practically disinherited, and the contest therefore was between the heirs-at-law and the devisees and legatees named in the will. If the will was sustained the heirs would get nothing. If set aside, the devisees and legatees would get nothing. The heirs were all therefore interested and would be benefited in a successful contest of the will, and the *53 beneficiaries under the will were all equally interested and would be benefited if the contest failed, and this interest caused all the heirs to array themselves as contestants and all the beneficiaries to band themselves together in the defense of the will. In both cases, the executor assumed the burden of the • defense of the will. In the first case the will was set aside; in the latter the will was sustained, and therefore the successful defense of the executor in the latter case inured to the benefit of all the beneficiaries under the will, and if they permitted the executor to make the defense for them, the property devised to them should bear his expense in so doing.
Two facts stand out prominently upon the record in these cases and apparently control the question: (1) the contest was between the heirs as a class and the beneficiaries under the will as a class, arrayed as opposing forces with no middle ground between them; and (2) the beneficiaries made no defense but permitted the executor to make it for them.
But if an executor does assume the burden of a will contest and is successful, it does not follow that he is entitled to credit in his account in all cases for his expenses incurred in so doing. His right thereto depends upon the circumstances of each particular case. Weir v. Weir, 7 C.C.(N.S.), 289.
The circumstances or factor controlling his right thereto is his personal interest or lack thereof in the result of the contest. As said by Jelke, J., in Weir v. Weir, supra, speaking at page 290:
“Where done in a disinterested effort to maintain the will and preserve the trust therein created and to effectuate the intention of the testator as declared in what is found truly to be his last will and testament, a court of chancery may allow the executor credit in his account for his expenses incurred in defending such'will.”
If he is a devisee under the will and his interest depends largely if not entirely upon its validity, the parties directly interested and not the estate should bear the expense of the litigation, for, as said by Macfarlane, J., in In re Estate of Soulard, 141 Mio., 642, speaking at page 670:
*54 “Any other rale might operate ruinously to estates, and is contrary to the manifest policy of our law. If the expense of the contestants is to be paid out of the estate, they would have nothing.to lose and everything to gain by the contest. There would be no limit to the expense the parties might incur short of the value of the estate itself. The entire estate could therefore be swallowed up in the litigation and the contestants, if successful, would reap a barren victory. A premium to contest the will would thus be given to parties who might be displeased with the disposition the testator had niade of his property. But few unsatisfactory wills would escape a contest. ’ ’
Looking then to the facts and circumstances of this particular case, the evidence discloses that the testator never married and died possessed of a large estate. In the second item of his will he devises to his grand-niece, Lois Curry, a minor, • certain real estate and $2,000 in money; in the third item thereof he devises to his grand-niece, Irma C. Ricker (nee Curry), certain real estate and appoints her executrix of his will and also trustee of the property devised to her sister in item two aforesaid; in the fifth item he gives to his sister, Mrs. Barr, $10,000 in money; in item six he gives $2,500 to his niece, Jean Curry Lindsey; in item seven he gives $500 to his nephew, Iienry Curry, and in item eight he gives to his grand-nephew and niece, Fern and Lowry Conley, jointly $500.
These legacies do not dispose of his entire estate, and he died intestate as to a considerable residue which descends to his lieirs-at-law. The specific legacies to Lois Curry and Irma C. Ricker are each of the approximate value of $10,000.
The testator died leaving two brothers, John P. and Sylvester Curry; one sister, Mrs. Barr, and John Y. and Elmer Curry, sons of a deceased brother. Irma and Lois Curry, the legatees named in items two and three, are children of said John Y. Curry and grandchildren of said deceased brother. Jean Curry Lindsey, the $2,500 legatee named in item six of said Will, is a daughter of Sylvester Curry, a brother of the testator aforesaid. The $500 legatees named in items seven and eight are children and grandchildren of John P. Curry, the brother of the testator aforesaid.
*55 Said John P. Curry, brother of the testator aforesaid, commenced an action to contest the will, and, having died, his brother, Sylvester Curry, renewed the same.
While Mrs. Barr survived the testator, she died before the commencement of said action of her brother, John P. Curry, to contest said will.
This action was tried three times before a jury and resulted in a final judgment sustaining the validity of said will.
Only the legatees, Irma C. Ricker and Lois Curry, and two of the sons of Mrs. Barr signed said contract of employment with said attorneys, the husbands of the two daughters of Mrs. Barr evidently representing them and by their authority signed the same for them. While Irma C. Ricker signed the contract as executrix, she bound herself personally only as heretofore shown. The attorneys represented those who employed them and their services were rendered evidently for the benefit of all their employers, and all were interested in having the will sustained.
Having employed counsel to defend said action to contest the will there was no occasion for the executrix to do so. Whether any of the other legatees should aid or assist or take any interest in the defense of said will was entirely personal to them and there is no evidence that they did so, or that they requested the executrix to make said defense.
The contest was not, therefore, between the heirs as a class and the beneficiaries under the will as a class, and the parties to said action were not thus interested and did not divide on those lines.
Said executrix being also a legatee had therefore a “divided duty” to perform, one of which she was not bound to assume, and self-interest would most likely prompt her to perform the other. She was, therefore, vitally interested in having the will sustained. Evidently the legacy to her and those to her sister, Lois Curry, and Mrs. Barr, invited the attack, and the rule is, that when her duty as an executrix is balanced against her private or individual interests the latter must yield, and all doubts and uncertain charges are to be resolved in favor of the estate, *56 for it would be inequitable for an executrix to defend her legacy and receive the same in its entirety with the expense of the defense charged to the heirs at law or residuary legatees under the will. Weir v. Weir, 7 C.C.(N.S.), 289, 291.
In view of the fact that she was a legatee and because thereof directly interested in sustaining the validity of said will, it is quite probable that her assumption of the defense of said will was not entirely a disinterested effort on her part as executrix to maintain the will regardless of any personal interest she may have had in the result of the contest. On the contrary, it is quite natural that in making said defense she was largely, if not entirely, controlled because of her personal interest in sustaining the will. If so, the case would fall within the general rule that an administrator or executor can not be allowed counsel fees incurred for services rendered in defense of his own personal interest, or where the litigation is in reality between beneficiaries, and not for, the benefit or in the interest of the estate as a whole. In re Whitlow’s Estate, 184 Mo. App., 229, 246, 247; 2d Woerner’s American Law of Administration (2d Ed.), Section 516.
The further claim is made that these legacies are special and that said legatees are entitled to receive the same without deduction or diminution, and it was not the intention of the testator that they should stand any part of the ex°pense of defending an unsuccessful attack upon the validity of the will, and that such expense should be justly borne by the residuary estate.
But as heretofore shown, it is a question between the legatees and the heirs-at-law, of whom only one of the latter attacked the will, and in which the estate can have no interest, and the case is not, therefore, unlike the case of Weir v. Weir, 7 C.C.(N.S.), 289, where the credit was disallowed because the attack on the will was chiefly due to the fact that a large special bequest was made to the executor, and although the attack was unsuccessful, it was held that the allowance was not permissible and the hardship cast upon the legatee requiring him to make the defense was "only one of the burdens incident to the acquisition and ownership of property,” and, as said by Jelke, J., speaking at *57 page 291 in that case, this objection would "lie just as well in the mouth of any successful defendant whose property rights had been assailed. ’ ’
In the ease of In re Account of Ullman, 12 C.C.(N.S.), 340, an executor successfully defended an action to set aside the will and was allowed a reasonable amount for counsel fees in that behalf, and the effect was to place the entire burden upon the residuary legatee. But it appears that the executor was practically a trustee and clothed with some extraordinary powers in addition to the ordinary duties of executor, and that such residuary legatee was the one most vitally interested in sustaining the will and made no defense and permitted the executor to assume the burden thereof and was quite willing to take the full benefits derived from, such successful contest.
The claim is also made that the executrix was appointed because of the confidence reposed in her by the testator; that she represents the testator in carrying out his will; that it is her duty to carry his will into execution; that his wishes should be respected, and that so solicitous was the testator in that respect that he visits his wrath upon those of his kindred who would lay profane hands upon his will or question its validity, and it is urged, therefore, that the executrix had a right to devote his estate to the defense of his will and from the vandal hands of those who would destroy it.
The court was greatly impressed with this claim, and although it gave it much consideration it can not adopt the same. While the executor represents his testator not only in executing the will after its probate, he also represents him in having it probated. It is his duty, therefore, to have it probated, for this is necessary in order to make it effective. In so doing, he acts in the capacity of a representative of his testator, and is entitled to be reimbursed out of the estate for all expenses incurred in good faith in the discharge of this duty, whether the will be established or rejected. In re Estate of Soulard, 141 Mo., 668.
But the will having been admitted to probate, the effect of the commencement of an action to contest the will is, under Section 10633, G-. C., to suspend, or at least greatly limit, the powers and *58 duties of the executor pending said litigation, and, as said by Macfarlane, J., in the case of In re Estate Soulard, 141 Mo., 671:
‘ ‘ The trusteeship of the executor is suspended during the litigation, and he has no power over the estate and no duty to perform in respect of it other than what he derived from his mere nomination by the testator.”
And therefore, as said by him at page 672:
“While it would have been the duty of the executor to propound the will for probate, and in statutory contests to make formal proof of its due execution and attestation, if no one else undertook that duty, yet the expense of trying the matters contested should be borne by the parties interested in the result.”
True, it is said by Brinkerhoff, J., in Andrews v. Andrews, 7 O. S., 143, speaking at page 151, that an executor is a trustee and having accepted a trust is bound to defend the trust estate; but he adds that with the exception of an obiter djctum referred to in the same opinion:
“We find no authority to sustain the position that a party acting as trustee is bound to defend tire relation of trustee whenever the rightful existence of that relation is assailed or called in question.”
The defense of a trust estate, therefore, presupposes its rightful creation and authority to exist. The defense of the validity of its creation is another matter and quite apart from the control and management of the trust estate.
The executrix, therefore, being a legatee and interested personally in sustaining the will, having joined with the other legatees likewise interested in sustaining the will in the employment of counsel to defend the same, there was no occasion for her, as such executrix, to dó so, and it follows that said amounts so paid to said attorneys are not proper items of credit in her account and should be disallowed, and the exceptions thereto are sustained.