W. C. SMITH, JR., Respondent, v. W. C. SMITH, Appellant.

Springfield Court of Appeals, April 14, 1915.

1. APPEAL AND ERROR: Evidence: Conflicting: Equally Divided. The appellate court will not disturb a judgment based on conflicting evidence equally balanced.

2. GIFTS: Bill of Sale: Delivery. Delivery of a bill of sale covering one-half interest in a meat market followed by a joint possession of donor and donee and an exercise of authority by donee, considered sufficient delivery to make a valid gift.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby*, Judge.

AFFIRMED.

*Talma S. Hefferman* and *Wright Brothers* for appellant.

(1) There was no consideration for any sale or bill of sale. And there was no bill of sale. To constitute a bill of sale, there must be either a consideration

actually paid or agreed to be paid for the property. Rosenthal v. Frank, 37 Mo. App. 278; Mills v. Williams, 31 Mo. App. 457; Keiler v. Tutt, 31 Mo. 302-306. (2) To constitute a valid gift *inter vivos,* there must be an intention to give and a delivery to the donee, or to some one for him, of the property given. An intention of the donor to give is not alone sufficient. The intention must be executed by a complete and unconditional delivery. Neither will a delivery be sufficient unless made with an intention to give. The transaction must show a fully executed transfer to the donee of the present right of property and the possession. The donee must become the owner of the property given. In re Estate of Souland, 141 Mo. 642-656-657; Lohnes v. Baker, 156 Mo. App. 397-405; Jones v. Falls, 101 Mo. App. 536-543.

*Fred O. Small* and *Patterson & Patterson* for respondent.

The bill of sale involved is regular and valid in every respect and falls within the terms of the definition given by appellant in point I. The bill of sale recites its consideration, $750.

ROBERTSON, P. J.—The plaintiff prevailed below and the defendant has appealed. The action is one in equity for the dissolution of a partnership alleged to have existed between defendant and plaintiff, father and son, and for an accounting. The defendant denies the partnership and the only question for our consideration is that of the sufficiency of the testimony to sustain the judgment of the trial court. The business is designated as the "Famous Meat Market" in Springfield.

The plaintiff testified that when he was in South Dakota working for $3.50 a day he received a letter from his father stating that he was getting old and

wanted to get out of business and that if the plaintiff would return to Springfield he would give him something better than he had in South Dakota; that his father sent him money upon which to return and that he arrived in Springfield, October the 6th or 7th, 1913, when his father told him that he was going to give him the business as he wanted to get out and that he immediately went to work and continued to work in the shop until about June 13, 1914, when a difficulty arose between him and his father resulting in the plaintiff being ousted from the business. Shortly thereafter this suit was brought. After the son commenced work in the shop he was paid $5 per week and was provided with board with a family who occupied one of defendant's residences and was told when he first commenced work that they would probably have a settlement about the first of the year. On April 4, 1914, the plaintiff reminded his father of his promise to give him an interest in the business and requested of defendant a bill of sale for one-half interest in the business; said bill of sale was made out, dated April 4, 1914, and signed by defendant but was not delivered to the plaintiff until a short time before this suit was commenced. Plaintiff further testified that the defendant had stated in the presence of several other parties that the plaintiff owned one-half interest in the store. One of these witnesses testified he was present when the defendant made this statement and that he heard the defendant further say that he had sent for plaintiff and had given him one-half interest in the business as that would give him a better chance to get out. The other witnesses contradicted the plaintiff's testimony as to what was said by defendant in their presence.

A traveling salesman testified in behalf of plaintiff that he saw a paper which the defendant showed him saying that he was going to give the plaintiff one-half interest and that this occurred about April, 1914.

A witness, Stahl, testified in behalf of plaintiff that he visited defendant's place of business in January or February, 1914, and the defendant then told him that he was figuring on turning the business over to plaintiff.

One McDice, testified for plaintiff that he was boarding at the same place where plaintiff boarded; that one day in the early spring of 1914, when the defendant was passing, he inquired of defendant about some meat and that the defendant told him to telephone the plaintiff as he was one of the bosses at the store and had as much to do with it as did the defendant and owned one-half interest therein.

Otis Hulse testified that in February, 1914, he was at defendant's place of business and, in a conversation there had, the defendant stated that the plaintiff had an interest in the shop.

T. E. Fuzzell, a driver of a bakery wagon, testified that the defendant said that if the plaintiff did the right thing he was going to give him one-half interest; that he had several conversations and in one of them the defendant said he was going to send for plaintiff. The witness does not fix the time of any of his conversations.

The defendant testified in his own behalf and stated that the plaintiff was always sending for money when he was away and that he told him that if he would come to Springfield and behave himself he would start him in business; that the plaintiff replied that if defendant would send him his fare he would come; that the plaintiff wanted $40 but that the defendant sent him only $15 and that he came and did not go to work until in November, 1913; that the plaintiff received a salary of $5 per week and his board valued at $4.50. The defendant testified: "And we went along that way until along in June; and then he asked me for the papers. . . . . I told him when he behaved himself

Smith v. Smith.

I would give him the papers. I said if you can sell Tom Fuzzell a half interest and I will give you the other half. I told him I didn't want to be in with him. I knew he would spend all I had." The papers referred to was the bill of sale and defendant testified that plaintiff got possession of it by representing that Fuzzell wanted to examine it. Without going into unnecessary detail it may be briefly said that the defendant's contention is that he desired to and was going to give the plaintiff one-half interest in the business provided the other one-half could be sold to Fuzzell. It may have been the idea of defendant also to give the plaintiff one-half interest if he would, as he called it, straighten up, but this phase of the defense is not clear. It appears that the plaintiff drank at times to excess, and it may be remarked that the defendant was no abstainer. It is admitted by the defendant that after the bill of sale was executed in April the plaintiff ceased drinking. However that may be it seems that the defendant must and does rely on the defense that the bill of sale was fraudulently obtained by the plaintiff. The only fraud charged is, as above stated, that the plaintiff got it under the pretense that he wanted to show it to Fuzzell. This man Fuzzell, as we have above noticed, testified in behalf of plaintiff. In June of 1914, whether before or after the bill of sale was delivered to the plaintiff is not shown, Fuzzell was at defendant's place of business and the defendant stated, when Fuzzell asked him about selling out, that he would like to do so and that he wanted plaintiff and Fuzzell to get together; that he (Fuzzell) afterward sent word to the defendant that he did not want it and after this the defendant told him that he was very foolish not to buy it. The defendant testified that he showed Fuzzell the bill of sale himself and told him he was going to give the plaintiff one-half interest if the plaintiff sold the other one-half to Fuzzell. It also appears that

the plaintiff had the bill of sale for several days after the defendant claims to have given it to him to show to Fuzzell and that the defendant made no inquiries of the plaintiff or request for the return of the bill of sale. The book of original entries was offered in evidence and at the time the plaintiff claims to have become a partner in the business the defendant's name appears written in the book, as he admits in his own handwriting, and at a place where the ordinary course of business would not require it, if there had been no change. At one place where his name was written by himself there has been something written after it which the plaintiff claims was evidence of the partnership but which has been erased. The book has been submitted to us but while it is apparent an erasure has been made we are unable to ascertain what was there before the erasure. Two of the defendant's employees testified in his behalf and while the defendant had testified that while plaintiff was in the shop he worked very little, yet it appears that the wages of these witnesses were raised, one $2 a week and the other $1.50 a week, soon after the plaintiff quit and soon after this suit was brought, as they say because they had more work to do after plaintiff left. Another witness, Bill Maggard, testified for the defendant that he took some beef to the defendant's shop to sell during the defendant's absence and that the plaintiff told him that he was just working there and that the witness would have to wait until the defendant came to get his money. The witness could not fix the date. C. F. Aucherman testified for the defendant that he was in the store during the early part of 1914, and that the plaintiff told him he was working for a salary.

In cases of this character we must review the testimony and pass judgment thereon, though we may in doing this, where there is involved such conflicts in testimony as to raise the question of the credibility

of witnesses, consider the advantage the trial court had of observing the witnesses testify and, when the record of the evidence before us appears to be equally divided between the contending parties, refuse to disturb the judgment. [Fifer v. McCarty, 243 Mo. 42, 48, 147 S. W. 833.]

The defendant does not deny that he intended to give the plaintiff an interest in the business, but does contend that he has not carried out the intentions. He was prompted by that intent to execute the bill of sale; the boy quit drinking and the paper was delivered to him. The defendant says he let him have it to show to Fuzzell, yet defendant showed Fuzzell the bill of sale before that time, must have known that it was not wanted for that purpose, according to his own story, and made no inquiry about it when it was not returned. We can find no reason for disturbing the trial court's finding.

The appellant cites in his reply brief *In re Estate of Soulard,* 141 Mo. 642, 656 and 657, 43 S. W. 671, to the effect that there can be no valid gift without an intent to give on the part of the donor and a delivery to the donee. The defendant admitted his intent to give, the only question being as to when he would make the gift and that he made the delivery is disposed of adversely to him by what we have said above as to the facts. According to plaintiff's testimony and that of his witnesses he was recognized by defendant as a part owner in the store and was there in possession and exercising authority over the business as such. This contention is without merit.

The judgment is affirmed.

*Farrington* and *Sturgis, JJ.,* concur.