RALPH ANDREW APPLEGATE, EXECUTOR, ESTATE OF LELIA V. HOLMES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7970.   Promulgated February 13, 1928.

*Bernard ·Potter, Esq.,* and *Lynden Bowring, Esq.,* for the petitioner.

*L. Dana Latham, Esq.,* for the respondent.

OPINION.

MARQUETTE: It is the contention of the petitioner that the stock of the American Brass Co. which Lelia V. Holmes disposed of in 1922 in connection with the reorganization of that company had a fair market value of from $142 to $145 per share on March 1, 1913, which should be used as a basis for computing Lelia V. Holmes' profit from that transaction, and that the two transactions between Lelia V. Holmes and Banks-Huntley in 1922 and 1923, respectively, were nontaxable exchanges of stock under section 202(c)(1) of the Revenue Act of 1921. The respondent contends that the fair market value of the American Brass Co. stock on March 1, 1913, was $138 per share and that as a result of the two transactions between Lelia V. Holmes and Banks-Huntley she realized taxable gain. If these two transactions are not nontaxable under section 202(c)(1) of the Revenue Act of 1921, there appears to be no dispute between the parties as to the profit received by Lelia V. Holmes therefrom.

Relative to the first question raised by the record, the only evidence of any probative force that was presented to us was that on March 1, 1913, on the New York Stock Exchange, $138 per share was bid and $142 per share was asked for American Brass Co. stock, but it does not appear that any shares were actually sold. Under the circumstances we are of the opinion that the respondent is not warranted in taking the lower of the two figures as the fair market value of the stock nor the petitioner in insisting that the higher figure should be adopted. We think that the average of the two prices, namely $140 per share, more nearly represents and should be taken as the fair market value of the stock on March 1, 1913, and we so hold.

The next question presented is whether the transaction by which Lelia V. Holmes acquired 400 shares of Eastman Kodak Co. stock and parted with 645 shares of Anaconda Copper Mining Co. stock was a sale by her of Anaconda Copper Mining Co. stock and a purchase of Eastman Kodak Co. or a nontaxable exchange of property under section 202 (c) (1) of the Revenue Act of 1921 which provides that:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, * * * no gain or loss shall be recognized—

(1) When any such property held for investment, * * * is exchanged for property of a like kind or use.

The evidence relative to this transaction discloses that all that Lelia V. Holmes was attempting to do was to exchange part of her

Anaconda Copper Mining Co. stock for other stocks and thus diversify her investments. She gave no order to Banks-Huntley to sell Anaconda Copper Mining Co. stock or to purchase Eastman Kodak Co. stock for her or on her behalf. She simply agreed with Banks-Huntley that she would exchange Anaconda Copper Mining Co. stock for stock of the Eastman Kodak Co. on the basis of the value of $53 per share for the former and $85 per share for the latter stock. She paid no money for the Eastman Kodak Co. stock and she received no money for the Anaconda Copper Mining Co. stock. The check for $20.95 which was given her was a balance which could not be absorbed by an exchange of stock unless the parties dealt in a fraction of a share which evidently they did not desire to do. We attach no importance to the fact that Banks-Huntley charged and collected a commission nor to the manner in which they handled the transaction on their books. The record is clear that as far as Lelia V. Holmes is concerned she intended to and did exchange Anaconda Copper Mining Co. stock for Eastman Kodak Co. stock. In *Katherine A. Spalding* v. *Commissioner*, 7 B. T. A. 588, we had occasion to pass on the question whether a certain transaction very similar to the one we are now considering constituted a nontaxable exchange of property under section 202(c) (1) of the Revenue Act of 1921. In holding that it did we said:

However, the uncontroverted evidence of what was actually done shows the essential elements of an exchange. The difference between a sale and an exchange is that in the former property is transferred in consideration of an agreed price expressed in terms of money, while in an exchange property is transferred in return for other property without the intervention of money. 23 C. J., p. 185. Here petitioner owned shares of stock of one corporation; Estabrook & Co. owned shares of another. She transferred her stock to Estabrook & Co. and the latter transferred to her in return stock which they owned of the other corporation, and each thereafter owned and held the stock thus acquired. There was no intermediary or any intermediate transfer.

Upon consideration of the transaction in question we are of the opinion that it was not a sale of stock by Lelia V. Holmes, but that it was an exchange of stock which under section 202(c)(1) of the Revenue Act of 1921 did not give rise to either gain or loss.

With reference to the transaction by which Lelia V. Holmes transferred to Banks-Huntley 700 shares of Anaconda Copper Mining Co. stock and received 350 shares of Associated Telephone Co. stock, it is our opinion that it was an exchange of securities, but that Lelia V. Holmes received taxable gain. Under section 202(c)(1) of the Revenue Act of 1921 as first enacted this exchange would not have been subject to income tax, but by the amendment of March 4, 1923, exchanges of stocks and bonds were expressly excluded from the exemption from taxation which had obtained under section 202(c)(1)

as originally enacted. This amendment was by its terms effective as of January 1, 1923; the exchange of stocks did not take place until after March 4, 1923. Whether it was within the power of Congress to make the amendment retroactive so as to affect transactions occurring before the date of its passage is not before us, since the transaction which we are considering occurred after the amendment was passed. There is some evidence that the parties had orally agreed to make the exchange "along the latter part of February or first of March," but that is not material here; the statute refers to an exchange of property, not an agreement to make an exchange at some future time. We think that under section 202(c)(1) of the Revenue Act of 1921 as amended by the Act of March 4, 1923, the exchange in question is not a nontaxable exchange of property and we so hold.

*Judgment will be entered on 20 days' notice, under Rule 50.*