MARGARET M. EDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11919. Promulgated April 17, 1928.

*Fred R. Angevine, Esq.*, for the petitioner.
*Brice Toole, Esq.*, for the respondent.

626

OPINION.

Smith: Since there is no assignment of error and since no evidence has been adduced in respect of the proposed deficiency for the year 1921, the Commissioner's determination for that year is approved.

The only objection made to the Commissioner's computation for the year 1919 is that he has included in gross income the profit from the sale of certain securities which the petitioner claims had been conveyed to her daughter as a gift prior to the date of their sale.

The first question for our consideration is whether the alleged gift by the petitioner to her daughter of the 708 shares of stock of The Texas Co. was an absolute gift. If so, the profit realized upon the subsequent sale of the stock was not income of the petitioner. The petitioner contends that she transferred the stock in question to her daughter prior to the time of its sale with the definite intention of making an absolute, irrevocable gift and that her only purpose in so doing was to provide for her daughter an independent and indefeasible income for the remainder of her life.

For the determination of the question of the validity of a gift *inter vivos* certain definite and well recognized rules have been formulated.

Presupposing parties legally competent to act there must be (1) a definite intention on the part of the donor to make an absolute gift; (2) delivery of the subject matter of the gift; and (3) acceptance by the donee. The rule has been stated by a few of the numerous authorities as follows:

\* \* \* Among the indispensable conditions of a valid gift are the intention of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift in praesenti at the very time he undertakes to make the gift; \* \* \* (*Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287.)

\* \* \* Gifts inter vivos of personal property, to be effective, must be accompanied by the delivery of the possession, the donor parting with all present and future dominion over it; the donor must be divested of, and the donee invested with, the right of property in the subject of the gift; it must be absolute, irrevocable, without any reference to its taking effect at some future time; and without such proof, clear and explicit, the gift fails. (*Bowen* v. *Kutzner*, 167 Fed. 281.)

But it is the intention of the alleged donor to give away his property, not the intention of the alleged donee, or his hope or belief, that conditions a valid gift. The clear and certain intention of the donor presently and forever to part with his property is indispensable to such gift. \* \* \* (*Snavely* v. *Henderson*, 204 Fed. 978.)

\* \* \* To constitute a valid gift inter vivos, there must be an intention to give, and a delivery unto the donee, or to some one for him, of the property given. An intention of the donor to give is not alone sufficient. The intention must be executed by a complete and unconditional delivery. Neither will a delivery be sufficient unless made with an intention to give. The transaction must show a completely executed transfer to the donee of the present right of property and the possession. The donee must become the owner of the property given. [Authorities cited.] (*In re Soulard's Estate*, 141 Mo. 642; 43 S. W. 617.)

The question of intent where any doubt exists is generally difficult of determination. It has been said that—

\* \* \* The intent of a person cannot be proven by direct or positive evidence. It is a question of fact, to be proven, like any other fact, by the acts, conduct, and circumstances. \* \* \* (*People* v. *Johnson*, 131 Cal. 511; 63 Pac. 842.)

So far as the evidence shows, the petitioner's first act bearing upon the transaction was her instruction to her brokers by telephone to transfer the stock to her daughter's account. She then wrote the letter of April 12, 1919, to her daughter in which she stated that she had made her a gift of 200 shares of stock, with certain reservations and conditions. At the bottom of this letter the daughter wrote "Accepted" and signed her name. She thus obligated herself to comply with all the conditions stated in the letter.

The petitioner testified that she telephoned to her brokers, Houston, Fible & Co., about the time she wrote the letter of April 12, 1919, to

transfer 708 shares of her Texas Co. stock to her daughter's account; that she had had no conversation with her daughter about making her a gift of the stock prior to that time. Her own words were:

I never talked with her about it, because she was not familiar with business matters, and I was just anxious to fix her so she—so if she lost all the rest she had, she would have that to keep her fed and clothed—the income of $100,000 of Liberty Bonds.

The petitioner's purpose in making the transfer to her daughter, as shown by her oral testimony, that is, to provide her daughter with an independent income for life, is clearly the intention shown in the letter of April 12, 1919. We believe that the first paragraph of the letter must be construed as contemplating the sale of the stock and the purchase of government securities with the proceeds and as intending the same as one of the conditions of the gift. This paragraph reads as follows:

I have transferred to you two hundred shares of Texas Oil Company stock as a gift, with this reservation, that when you sell the stock you invest the proceeds in United States Government securities, to so remain during your life, with the further understanding that no part of the principal will be disposed of either by sale or used for loan.

The second paragraph of the letter reading "the income use as your best judgment may dictate" shows a definite intention to make an absolute and unconditional gift of the income from the securities. The letter further provides:

Should death occur to you before either your father or myself, then the securities will revert to me, otherwise to him.

If married and no issue, the preceding paragraph will prevail.

If issue, the securities will be left in trust for the issue.

All of the 708 shares of stock were transferred to the daughter's account at intervals over a short period of time, in accordance with petitioner's instructions to her brokers, and soon thereafter were sold by the brokers and the proceeds deposited at the bank to the daughter's credit. The dates of the sales and the amounts received were as follows:

| Date. | Shares. | Amounts. |
| --- | --- | --- |
| May 5, 1919 | 200 | $46,000 |
| June 24, 1919 | 200 | 53,350 |
| July 16, 1919 | 100 | 28,000 |
| Sept. 9, 1919 | 100 | 27,100 |
| Oct. 7, 1919 | 108 | 30,786 |

While the letter of April 12 refers specifically to only 200 shares of stock, we may reasonably assume that the other 508 shares were transferred upon the same conditions.

It may be well to state here that we deem the requirements for delivery and possession to have been satisfactorily met by the transfer of the stock to the donee's account in the books of Houston, Fible & Co.

\* \* \* A delivery is sufficient if made to a third person for the grantee or beneficiary, "without reservation, and with the intention that it shall take effect from that time, and shall operate as a transfer of the title." *Sneathen* v. *Sneathen,* 104 Mo. 201; 16 S. W. 497; *Hamilton* v. *Armstrong,* 120 Mo. 597, 25 S. W. 545; *Rothenbarger* v. *Rothenbarger,* 111 Mo. 1, 19 S. W. 932. (*In re Soulard's Estate, supra.*)

See also *Basket* v. *Hassell,* 107 U. S. 602; *Conlon* v. *Turley,* 10 Fed. (2d) 890.

There certainly exists some doubt, however, as to whether the petitioner intended absolutely and irrevocably to divest herself of all title, dominion and control of the stock and to vest the same in the beneficiary. We will first consider the conditions expressly made in the letter declaring the gift. We do not find the rule inflexible that any condition whatsoever attached to a gift renders it invalid. In *Beaumont* v. *Beaumont,* 152 Fed. 55, it was held that a donor may attach a condition to a gift *in praesenti* if that condition be not inconsistent with possession or control of the thing given. The court there said:

The underlying question of these assignments is, what are the essentials required by the law to constitute a valid gift of personal property inter vivos, in a case like the present? Undoubtedly, there must be shown an intention to give; that is, an expressed purpose to divest the donor of title in and ownership of the thing given, carried into effect and evidenced by a delivery of possession to the donee, and acceptance by him. It, of course, inheres in the conception of the possession essential to a completed gift, that the donee should have such control, and such control only, of the subject matter of the gift, as is consistent with the ownership purported to be transferred to him. What shall constitute the essential delivery, possession or control, must depend always on the circumstances of each case and the environment of the parties. \* \* \*

The court was there considering primarily whether retention by the donor of physical control of the thing given invalidated the gift. The donor had handed over to the donees, his brothers, certain securities, stating that they were a gift but that he, the donor, desired the donees to give him the coupons maturing thereon during his life. The bonds were then placed for safekeeping in a vault to which the donor and the donees had access. Thereafter the donor visited the vault and removed the coupons himself. The court held that such partial control did not invalidate the gift nor did the condition that the donor was to receive the income from the securities for life.

The Supreme Court of Missouri in *In re Soulard's Estate, supra,* had before it a situation very similar to the one in the case at bar. By a certain testamentary writing it was provided as follows:

I give to [naming the donees] the following described notes and bonds, or any reinvestment of the same that may hereafter be made, * * * reserving, however, for my own use, during my life, the income and interest from said bonds and notes, and restraining them from making any disposition of the principal of said bonds and notes during my life, and also reserving the right to reinvest any money from the payment of these notes and bonds as to me may seem fit, * * *.

It was held that such disposition of such notes and bonds and their proceeds could not be enforced as a gift, as the right of control reserved by the donor was inconsistent with absolute ownership by the donees. The court further said:

* * * The transfer to the donees is not absolute and unqualified. The right of control reserved by the donor is inconsistent with absolute ownership by the donees. The donees took no present, unconditional title to the notes so long as the donor retained control of them and their proceeds. It is clear that the donor intended that the gift should not become perfect until his death. The disposition attempted to be made of the notes and bonds and their proceeds cannot therefore be enforced as a gift.

The court did hold, however, that the transaction constituted a valid trust.

In *Harris Banking Co.* v. *Miller*, 190 Mo. 640; 89 S. W. 629, the court followed its decision in the *Soulard* case and held that the attempt to make a gift failed for the reason that the donor retained an interest in and control over the subject matter, but that there was created a valid enforceable trust. In each of these cases the donor or trustor had retained a life interest in the income from the property given. This we believe to be the chief distinction between the case at bar and *In re Soulard's Estate, supra.* In *Telle* v. *Roever*, 159 Mo. App. 115; 139 S. W. 256, the court held that the mere retention by the donor of the power to enjoy the use of the thing given for life did not destroy the validity of the gift. See also *Beaumont* v. *Beaumont, supra.* The petitioner here, though not retaining any life interest in the income from the securities, did direct that they should be sold and that the proceeds should be reinvested in certain other designated securities, that no part of the principal should ever be disposed of by the beneficiary and that the securities should revert to her in the event she was predeceased by her daughter, leaving no issue. The daughter was then thirty-five years of age and had been married and divorced four years previously.

There is no necessity for the establishment of a trust here since there is no active duty prescribed for a trustee to perform. The petitioner has attempted to vest in the beneficiary both the equitable title and the legal title, conditionally, which is inconsistent with the theory of a trust. We have no doubt that she could have best carried out the purpose in mind by creating a trust, either declaring

herself trustee or conveying legal title to a third person, for the benefit of her daughter, but this was not attempted nor was such intention shown. The rule is well settled in Missouri, as stated in both of the above discussed cases, that the courts will not convert an imperfect gift into a valid trust merely because of such imperfection. See also *Eschen* v. *Steers*, 10 Fed. (2d) 739, and references there given.

About the last of July, 1919, the petitioner and her daughter left for a visit to Japan and did not return until some time in November. On the 21st of July, 1920, the trust instrument, set out in the foregoing findings of fact, was executed.

We are convinced from the oral testimony and other evidence that the daughter did not at any time consider herself the absolute owner of The Texas Co. stock or the proceeds from the sale of the stock, and that she did not at any time exercise complete and independent control and ownership over it.

In the light of all the evidence before us, we are of the opinion that the petitioner was the legal owner of the stock at the time of its sale in 1919. In arriving at our conclusion we have tried to ascertain the petitioner's real intention and have taken into consideration all of the circumstances and acts of the parties. It should be borne in mind that the transactions here took place between a mother and father and their daughter who were all living together and among whom there has never been any contention with respect to the matters in question. We believe the evidence clearly shows that the petitioner's primary intention was to provide her daughter with an adequate income for life. She realized that on account of her daughter's lack of business experience and independent knowledge of business affairs it would be unwise to entrust her with the absolute ownership and control of any large amount of property, and we do not believe that she intended to so do. There was not that fixed purpose at the time the assignment was made to then divest herself of all title, dominion and control of the stock and to vest these irrevocably in her daughter, which was said in *Allen-West Commission Co.* v. *Grumbles*, *supra*, to be essential to a valid gift. We do not believe that where the petitioner set out in her own way to accomplish one thing, in which she failed perhaps for want of competent advice, we should hold that she did by her acts accomplish another thing which she did not intend.

Although the validity of a gift once complete is not brought into question by the subsequent possession of and the exercise of dominion and control over the thing given by the donor, *Beaumont* v. *Beaumont*, *supra*, we believe that the validity of the gift here should be determined not upon any single act of the parties or at any particular time in the series of events related, but that we should consider

together all of the acts and circumstances up to the time that the parties themselves deemed the matter finally settled. To find, as the petitioner asks us to, that a completed gift of the stock is evidenced by the letter of April 12, 1919, we would have to hold that the subsequent trust agreement of July 21, 1920, was without meaning or effect. It appears, however, that this trust agreement was put into effect immediately and has continued to operate up to the present time. The instrument itself is regular and complete, and apparently meets all the requirements of the laws of Missouri with respect to the creation of valid trusts. The petitioner herself conceived the idea of creating the trust and suggested the terms of the agreement. It does not appear that any doubt existed at that time in the minds of the parties as to the petitioner's ownership of the bonds. The trust has never been set aside by the courts of Missouri or attacked heretofore upon any grounds. The trust agreement accomplishes the purpose that the petitioner apparently had in mind from the beginning, and is the means, we think, which the parties would have adopted if they had been properly advised.

It is significant that only little more than half of the proceeds of the 708 shares of stock was ever invested in Government securities. According to the petitioner's own theory of a gift this constituted a violation of the condition subsequent, that "the proceeds" from the sale of the stock be invested in United States Government securities, and rendered the gift subject to repudiation by the donor. *Halbert* v. *Halbert*, 21 Mo. 277.

It permits of no argument that under the circumstances here present the relinquishment of the revocable clause of the trust agreement which was made June 29, 1925, can not be given retroactive effect. The relinquishment was not made until the revenue agent had called the petitioner's attention to the effect of the revocable clause of the trust. Moreover, by its expressed terms, the relinquishment provided that "said trust shall be from the date hereof irrevocable." But since our question goes to the ownership of the stock at the time of its sale in 1919 this phase of the matter is not material to the issue raised.

The remaining issue relates to the exchange by the petitioner in the year 1922 of certain shares of stock in The Texas Co., a corporation organized under the laws of Texas, for debenture bonds in the Galena-Signal Oil Co., a corporation organized under the laws of Pennsylvania. It is conceded that the bonds received in exchange for the stock had a "readily realizable market value" within the meaning of section 202 of the Revenue Act of 1921, and it is stipulated by the parties that a capital gain in the amount of $30,540 was realized upon the transaction. It is the petitioner's contention that this was an exchange of property held for investment for property of a like kind

or use, within the meaning of section 202 of the Revenue Act of 1921, and that the gain thereon is not taxable. Section 202 (c) (1) provides that:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

(1) When any such property held for investment, or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale), is exchanged for property of a like kind or use.

We can not agree with the petitioner's contention. It is not necessary to point out the numerous differences in the character and uses of these two forms of property. Generally a share of stock evidences an interest in the ownership of a corporation, while a bond evidences simply an obligation of the corporation. The bondholder stands somewhat in the position of a mortgagee. The quoted section of the Act is interpreted in the Commissioner's Regulations 62, article 1566 (a), in part as follows:

Where property held for investment is exchanged for other property of a like kind, or where property held for productive use in trade or business is exchanged for other property of a like use. The words "like kind" are defined as having reference to the nature or character of the property and not its grade or quality. Therefore under this paragraph no gain or loss is realized by one other than a dealer from the exchange of real estate for real estate, or from the exchange of evidences of indebtedness (such as bonds and notes) for evidences of indebtedness, or from the exchange of shares of stock for other shares of stock; *but one kind or class of property may not, under this paragraph, be exchanged for property of a different kind or class, as shares of stock for bonds or real estate for personal property.* * * * (Italics ours.)

· In *Marr* v. *United States*, 268 U. S. 536, the Supreme Court held that where stock of a certain character in a corporation organized under the laws of one State was exchanged for stock of a different character in a corporation organized under the laws of another State, where the one corporation had taken over the assets and business of the other, an essentially different interest was acquired which resulted in a taxable gain under the Revenue Act of 1916. In *Commercial Trust Co.*, 8 B. T. A. 1138, where we considered a similar transaction with reference to the 1916 Act, we said:

Petitioner held bonds and notes of the Pere Marquette Railroad Co. After the reorganization it held prior preference stock and common stock of the new company, some of which it acquired in exchange for bonds and the larger part of which it acquired from the purchase syndicate for cash. The rights which petitioner possessed by reason of the ownership of the bonds and notes of the old company were materially different from its rights under the stock of the new company which it acquired. * * *

While it appears that both the stock and the bonds here were held by the petitioner for investment purposes and to that extent were in

fact appropriated to the same use, we do not believe that this meets the requirement of the statute that the properties be "of a like kind or use". This phrase refers to the nature of the property and its potential uses, otherwise the word "kind" would be mere surplusage and the statute would be made to say that no taxable gain is derived from the exchange of property, held for investment or for productive use in trade or business, for property of a like use. We believe that the Commissioner's regulations above quoted properly reflect the meaning of the statute and are applicable in the instant case.

*Judgment will be entered for the respondent.*