ARTHUR P. PEARCE, JOHN F. TOMFOHRDE AND RICHARD TOMFOHRDE, TRUSTEES UNDER THE WILL OF ANDREAS TOMFOHRDE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9615.   Promulgated August 1, 1928.

*John F. Malley, Esq.*, and *John M. O'Donohue, Esq.*, for the petitioners.

*M. E. McDowell, Esq.*, for the respondent.

OPINION.

MARQUETTE: The petitioners contend: (1) That the transaction described in the findings of fact was a nontaxable exchange of property within the meaning of section 202(c) of the Revenue Act of 1921, and that only as much of the gain, if any, is taxable under the Revenue Act of 1918, as the proportion of the fiscal year falling in the calendar year 1920 bears to the entire fiscal year; (2) that the profit, if any, should be computed by taking as the basis thereof, a fair market value of $900,000 for the Court Street property on March 1, 1913, and a fair market value of $375,000 for the Brookline property on November 18, 1920. The respondent urges that as the transaction was a sale occurring in the year 1920 it is not governed by the provisions of the Revenue Act of 1921 but by the Act of 1918, and that the fair market values of the Court Street and Brookline properties on the dates mentioned were $750,000 and $500,000, respectively.

We are of opinion that the transaction herein constituted an exchange taxable under the Revenue Act of 1918, but exempt from tax under the Revenue Act of 1921. The petitioners made their income-tax returns on a fiscal year basis covering the period November 1, 1920, to October 31, 1921, and are entitled to have their tax computed for that period under section 205(a) of the Revenue Act of 1921, which provides as follows:

That if a taxpayer makes return for a fiscal year beginning in 1920 and ending in 1921, his tax under this title for the taxable year 1921 shall be the sum of: (1) the same proportion of a tax for the entire period computed under Title II of the Revenue Act of 1918 at the rates for the calendar year 1920 which the portion of such period falling within the calendar year 1920 is of the entire period, and (2) the same proportion of a tax for the entire period computed under this title at the rates for the calendar year 1921, which the portion of such period falling within the calendar year 1921 is of the entire period.

Any amount paid before or after the passage of this Act on account of the tax imposed for such fiscal year by Title II of the Revenue Act of 1918 shall be credited toward the payment of the tax imposed for such fiscal year by this Act, and if the amount so paid exceeds the amount of such tax imposed by this Act, the excess shall be credited or refunded in accordance with the provisions of section 252.

The respondent's regulation (article 1622, Regulations 62) governing computation of tax under this section is as follows:

The method provided for computing the tax for a fiscal year beginning in 1920 and ending in 1921, is as follows: (a) The tax attributable to the calendar year 1920 is found by computing the income of the taxpayer and the tax thereon in accordance with Title II of the Revenue Act of 1918 as if the fiscal year was the calendar year 1920, and determining the proportion of such tax which the portion of such period falling within the calendar year 1920 is of the entire period; (b) the tax attributable to the calendar year 1921 is found by computing the income of the taxpayer and the tax thereon in accordance with the present statute as if the fiscal year was the calendar year 1921, and determining the proportion of such tax which the portion of such period falling within the calendar year 1921 is of the entire period; and (c) the tax for the fiscal year is found by adding the tax attributable to the calendar year 1920 and the tax attributable to the calendar year 1921.

We believe this regulation to be a proper construction of the statute, and in accordance therewith the tax herein should be determined by computing the petitioners' income and tax according to the Revenue Act of 1918 as if the fiscal year was the calendar year 1920, and determining the proportion of such tax which the portion of such period falling within the calendar year 1920 is of the entire period, and by computing the income and tax under the Revenue Act of 1921 as if the fiscal year was the calendar year 1921, and determining the proportion of such tax which the portion of such period falling within the calendar year 1921 is of the entire period. The tax for the fiscal year is determined by adding the tax attributable to each of the calendar years 1920 and 1921.

The only other issue is as to the value of the Court Street property on March 1, 1913, and of the Brookline property on November 18, 1920. The petitioners introduced three real estate brokers and operators who were familiar with the Court Street property and of other property in that vicinity. One broker, Richard B. Boardman, testified that he had been in the real estate business for 27 years and in that time had sold more than $20,000,000 of property in the Court Street district, and had been agent and trustee for other property in that vicinity; that in January, 1914, he was commissioned to buy the property at 37–51 Court Street and was authorized to offer $900,000 therefor; that he offered the petitioners $850,000 for the property but that the petitioners refused to sell for less than $1,000,000 and that he considered that $900,000 was the fair market value of the property on March 1, 1913. Charles E. Wyzanski testified that he and his brother, Max Wyzanski, had been engaged in the real estate business for more than 30 years and had bought and sold more than $3,000,000 of real estate in the vicinity of Court Street and still owned about $1,000,000 in that neighborhood. He also testified that in 1910 he offered Andreas Tomfohrde $800,000 for the property at 37–51 Court

Street and indicated that he might be willing to pay $825,000, but that Tomfohrde refused to sell for less than $900,000. Charles E. Wyzanski also testified that the property was more valuable in 1913 than in 1910, and that he considered that it had a fair market value of $870,000 on March 1, 1913. Max Wyzanski also testified as to the same value on March 1, 1913. Arthur P. Pearce, one of the petitioners, testified that in or about the year 1913 he was offered $900,000 for the Court Street property, but refused to sell for less than $1,000,000, and that he considered the property worth more than $900,000 on March 1, 1913.

In support of their contention that the fair market value of the Brookline property was not to exceed $375,000, on November 18, 1920, the petitioners rely on the testimony of Frank Ross, a real estate broker and operator. He testified that he had been engaged in the real estate business for 23 years and had specialized in property in Brookline and Boston, and in the year 1920 was familiar with the Brookline property involved herein. He discussed in detail the conditions affecting the value in November, 1920, including the location of the property, the construction and design of the apartments, the gross and net rentals and the availability of money for financing, and also the actual number of sales of other apartments in the same neighborhood. He testified that due to the faulty construction and design of the Tomfohrde property, the rentals realized were relatively small in proportion to the operating and other expenses, and he cited five actual sales at an average price of about $25,000 of apartment houses of about the same construction and in the same vicinity of the Tomfohrde property and having the average rentals greater than the rental for the Tomfohrde house. He also testified that these apartment houses were much less expensive to operate and therefore showed a proportionately larger net income than the Tomfohrde property. He gave it as his opinion that the fair market value on November 18, 1920, of the property at St. Paul and Egmont Streets, Brookline, free from mortgages, was $360,000 and that if proper mortgages could be secured, the property might have brought up to $400,000. He further testified that the fair market value of the Brookline property in 1924 was greater than in 1920, due to a widespread increase in apartment-house values, a considerable increase in rents, a greater and cheaper supply of credit, and a general public interest in property of this class.

Arthur P. Pearce, one of the petitioners herein, testified that he sold the Brookline property in 1924, receiving $65,000 in cash, two second mortgages on other real estate having a face value of $35,000, and a first mortgage on the Brookline property having a face value of $400,000. He also testified that in his opinion the property was worth about $375,000 when the trustees acquired it in 1920.

154

We have carefully considered the evidence presented as to the values of the two parcels of real estate involved in this proceeding, and we are of the opinion that it is amply sufficient to establish that the fair market value of the Court Street property on March 1, 1913, was $900,000, and that the fair market value of the Brookline property on November 18, 1920, was $375,000, and we so hold.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*