RICHARD T. GREENE AND LAWYERS TRUST CO., TRUSTEES OF THE ESTATE OF WILLIAM HALL WALKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23973.   Promulgated February 14, 1929.

*James L. Dohr*, *Esq.*, and *Francis B. Hamlin*, *Esq.*, for the petitioners.

*O. Bennett*, *Esq.*, for the respondent.

402

404

OPINION.

STERNHAGEN: The petitioners are, and during the year 1922 were, the trustees of an active trust taxable for 1922 under section 219, Revenue Act of 1921. During 1922, having held for the investment purposes of the trust, 5,534 shares of the common stock of Eastman Kodak Co., the income of which had been used for distribution under the trust, they exchanged such stock for Federal, State, municipal and railway bonds and thereafter used the income therefrom in the same way. None of the primary facts are in dispute; the only controversy is as to whether the gain of $1,175,975 escapes recognition and its consequent tax because of section 202 (c) (1), Revenue Act 1921. This provision is as follows:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

(1) When any such property held for investment, or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale), is exchanged for property of a like kind or use.

It is clear that this was an exchange of property held for investment for other property held for investment. Not only was this proven in fact by the testimony of one of the executors and trustees, but this was the obvious necessity of the trust under its terms. The refusal of the respondent to treat the exchange as within section 202 (c) (1) is based on his view, clearly expressed in his Regulations 62, article 1566, that bonds are not property "of a like kind" as stock. In thus narrowing the question he also treats the words "or use" as not applicable to investment property but applicable only to productive business property.

We think there is no support for respondent's refusal to apply the words "or use" to investment property. However logical it might otherwise be to treat the word "use" as if its meaning were the same in each of its two places in the single sentence, the history of the provision in Congress destroys this construction and shows that the words "like kind or use" were intended by Congress to be applied to all the property received in any such exchange as is covered by the

paragraph. As the provision appeared in the original House Bill, H. R. 8245, section 202 (d), it was in the form as finally enacted. The House Committee on Ways and Means, to which the bill was referred, said in its report:

The bill (subdivision (d), p. 6) provides new and explicit rules for determining gain or loss where property is exchanged for other property. Under existing law, "when property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any * * * ." Probably no part of the present income-tax law has been productive of so much uncertainty and litigation or has more seriously interfered with those business readjustments which are peculiarly necessary under existing conditions. Under existing law the presumption is in favor of taxation. The proposed bill modifies that presumption by providing that on an exchange of property for property no gain or loss shall be recognized unless the property received in exchange has a definite and readily realizable market value; and specifies in addition certain classes of exchanges on which no gain or loss is recognized even if the property received in exchange has a readily realizable market value. The preceding amendments, if adopted, will by removing a source of grave uncertainty, not only permit business to go forward with the readjustments required by existing conditions but will also considerably increase the revenue by preventing taxpayers from taking colorable losses in wash sales and other fictitious exchanges. Proper safeguards are found in subdivisions (e) and (f), which provide that where property is exchanged for other property and no gain or loss is recognized the property received shall be treated as taking the place of the property exchanged, for the purpose of determining gain or loss and for the purpose of determining certain important deductions, such as those for depreciation.

The Senate received the bill in this form and struck out the words "investment or for," leaving the provision as follows:

(1) When any such property held for ~~investment, or for~~ productive use in trade or business (not including stock-in-trade or other property held primarily for sale), is exchanged for property of a like kind or use.

The Finance Committee in its report to the Senate said:

Section 202 (subdivision c) provides for those exchanges or "trades" in which, although a technical "gain" may be realized under the present law, the taxpayer actually realizes no cash profit.

Under existing law "when property is exchanged for other property, the property received in exchange shall, for the purpose of determining gain or loss, be treated as the equivalent of cash to the amount of its fair market value, if any * * * ." Probably no part of the present income tax law has been productive of so much uncertainty or has more seriously interfered with necessary business readjustments. The existing law makes a presumption in favor of taxation. The proposed act modifies that presumption by providing that in the case of an exchange of property for property no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value, and specifies in addition certain classes of exchanges on which no gain or loss is recognized even if the property received in exchange has a readily realizable market value. These classes comprise the cases where productive property (other than stock in trade or property held primarily

for sale) used in a trade or business is exchanged for property of a like kind or use; where in any corporate reorganization or readjustment stock or securities are exchanged for stock or securities of a corporation which is a party to or results from such reorganization; and where an individual or individuals transfer property to a corporation and after such transfer are in control of such corporation.

The preceding amendments, if adopted, will, by removing a source of grave uncertainty and by eliminating many technical constructions which are economically unsound, not only permit business to go forward with the readjustments required by existing conditions but also will considerably increase the revenue by preventing taxpayers from taking colorable losses in wash sales and other fictitious exchanges.

Proper safeguards are found in subdivision (d), which provides that where property is exchanged for other property or where property is involuntarily converted into cash and the proceeds of such conversion are used to replace the property converted, or where a wash sale is not recognized, the property received in exchange shall be treated as taking the place of the original property.

The bill then went to conference and the Conference Committee of both houses restored the stricken words and in its report said:

Amendment 41: The House bill provided that when property held for investment is exchanged for property of a like kind or use no gain or loss shall be recognized even if the property received in exchange has a readily realizable market value. The Senate amendment strikes out this provision; and the Senate recedes.

Thus the Act was passed.

This indicates unmistakably that all the words "like kind or use" were intended to be applied indifferently to property received in exchange for investment property and for property held for productive use. Since this is a fair and reasonable interpretation of the language used, the statute must be so construed. Thus the words "like kind or use," which in their ordinary meaning are of broad scope, are found to elucidate each other and to aid in effectuating the general purpose of the statute.

We are also of opinion that the transactions before us are within the language and purpose of the statute. We see no justification for saying as a matter of law that for the purpose of this statute stocks and bonds are *per se* not property of like kind or use. The words can not fairly be regarded as importing distinctions which have no relation to the purpose of the statute. Stocks and bonds are both commonly regarded as investment property, and if in any case they are not so in fact it must be because the evidence so indicates. While their legal incidents are different, such differences are not controlling of the scope and purpose of this statutory provision, although they may be of great importance when involved in another statute. Because the Supreme Court held in *Marr* v. *United States*, 263 U. S. 536, that stock in an old corporation was "an essentially different

thing from stock of the same general kind in the new," it does not follow that investment in one would not have been held of like kind or use as investment in the other, had this statute been under consideration. Both the language and the purpose of the two statutes are different, and the two questions require different methods of approach.

If the test lies in an identity of legal rights inherent in the property, the provision could be practically nullified. Is preferred stock only to be exchanged for preferred stock, and if so, is all preferred stock to be treated as of like kind? Suppose that instead of exchanging the Eastman stock for several classes of bonds, these trustees had taken in part some common or preferred stock, see *Applegate, Executor*, 10 B. T. A. 705; it is not reasonable to say that Congress intended by a method of apportionment or otherwise to tax a part of the gain in the year of exchange and leave the remaining gain unrecognized until a future sale, when the old basis is to be used. Such a distinction would be wholly arbitrary and have no sensible relation to the plan or purpose of the statute. It was apparently intended to ignore the usual gain or loss if an undoubted investor merely shifted his investment into other property—to soften the sharp lines of the law not only so as to relieve from tax a technical gain but also to prevent the deduction of " colorable losses." To interpret this by setting up a rigid classification as between stocks and bonds would merely change the standard of gain or loss from one technical test to another. By virtue of what test is investment property to be classified, if, as respondent's regulation, article 1566, indicates, all real estate is treated as of a kind, such as city lots and a ranch, *E. R. Braley*, 14 B. T. A. 1153, or a city office building and a suburban apartment house, *Pearce, Trustee*, 13 B. T. A. 150, while securities are to be classified according to their " nature," so that stocks of all classes are of like kind, such as common and preferred, *Frank Filer*, 14 B. T. A. 1084, but are not of like kind with debenture bonds, *Margaret M. Edson*, 11 B. T. A. 621? To say that industrial bonds, on the one hand, and municipal, State, and Federal bonds, on the other, differ only in " grade or quality " and not in " kind or class " as in respondent's ruling, GCM 1637, VI–1 CB 166, creates a strained distinction. Congress has laid down no such test in the Act and nothing in its legislative reports indicates such a restriction upon the ordinary meaning of the language used. The regulation goes further than the statute and is in our opinion unauthorized. *Morrill* v. *Jones*, 106 U. S. 466.

If it be asked, what is the scope of the language used, it can only be said that no classification can be laid down in advance which in any instance would defeat the intendment of the statute. The

amending Act of March 4, 1923, has removed both stocks and bonds from the operation of the provision and thus has narrowed the field of difficulty.

We conclude that the exchange shown by the evidence is within the description of section 202 (c) (1) and hence that there was no recognizable or taxable gain. The decision in *Margaret M. Edson*, 11 B. T. A. 621, is *pro tanto* overruled.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

TRAMMELL dissents.

---

SMITH, dissenting: The record of this action shows that the transaction found by the Board to be an exchange of 5,534 shares of the common stock of the Eastman Kodak Co. for Federal, State, municipal, and railway bonds having a fair market value of $3,666,275 was of this character: "In addition to the sale for cash of 700 shares Eastman Kodak common stock as set forth in Schedule D herein, the estate disposed of by exchange, during the month of April, 1922, 5,534 shares of the same stock at a stated value of $662.50, receiving in exchange therefor, together with a cash payment on the part of the estate of $1,911.56 bonds as shown by the attached schedule at the values therein stated." (Return of Estate introduced as Exhibit 1.) The full exhibit shows that the estate acquired the bonds of the above character of a value of $3,668,186.56, paying therefor $1,911.56 cash and 5,534 shares Eastman Kodak Co. common stock at a price of $662.50 per share.

How did this transaction differ from a "sale" of the shares and a "purchase" of the bonds? I assume that if it had been denominated a "sale" and not an "exchange" there would be no question but that the profit realized therefrom in the amount of $1,175,975 would be held to be taxable gain. "A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent." *Iowa* v. *McFarland*, 110 U. S. 471. This transaction meets all the requirements of the definition of a sale. As was stated by the court in *Commonwealth* v. *Clark*, 14 Gray (Mass.) 372, the distinction between a sale and exchange of property is rather one of shadow than of substance. In both cases the title to property is absolutely transferred, and the same rules of law are applicable to the transaction, whether the consideration of the contract is money or by way of barter. But in this case the consideration was in terms of money. The shares of stock were disposed of at a price of $662.50 per share and the bonds were acquired at specified prices and the difference between the total price of the bonds and the total agreed price of the stocks was settled by a money consideration. The mere desig-

nation of the transaction as an exchange does not change its essential character.

Even if the transaction may be regarded as an "exchange," I dissent from the proposition that the words "like kind" have no application to the situation. This holding is directly contrary to the Commissioner's regulations, article 1566 of Regulations 62. If I understand the basis of the opinion of the Board, it is that the shares of stock could have been exchanged for any class of property such as real estate, promissory notes, or even money without incurring liability to tax, provided the property received in exchange were held for the purposes of the trust. It appears to me that the words "like kind" must have some force in the statute. They can not be deleted in its interpretation. But in what case would they have application if not in the instant proceeding?

An inspection of the statute shows that it refers to two classes of property:

(1) That held for investment, and

(2) That held for productive use in trade or business.

It appears to me that the words of the statute, "like kind or use," refer to these two classes of property and that property held for investment must be of a "like kind," and that where there is an exchange of property for productive use in business for other property the property received in exchange must be likewise held for productive use, and that the word "use" has particular application to the latter kind of property. This construction gives force to all the words of the statute. The Board opinion holds that all that is necessary is that the property received by the petitioners in exchange for their shares of stock must be held for investment; that where it is held for investment the same "use" of the property is made. It appears to me, however, that the property held for investment is not *used* in the ordinary sense of the term.

If there is any doubt upon the construction of this portion of the statute it should be resolved against the taxpayer and not in his favor, for provisions tending to exemption from tax are strictly construed.

It is further to be observed that regulations of an officer charged with the administration of a taxing statute are entitled to the greatest consideration and are not to be lightly disregarded by the courts. In cases of ambiguity in a statute, contemporaneous construction by a department charged with its enforcement, long followed in practice, is generally held to be controlling. *Schell* v. *Fauche*, 138 U. S. 562. Under the regulations of the Commissioner shares of stock of one corporation are not property of a "like kind" with bonds of a State or of another corporation. The Board so held in *Margaret M. Edson*, 11 B. T. A. 621. I see no reason for reversing that stand.