William B. Neville and Marion B. Neville v. Commissioner.
Neville v. Commissioner
Docket No. 5138-65.
United States Tax Court
T.C. Memo 1967-95; 1967 Tax Ct. Memo LEXIS 165; 26 T.C.M. (CCH) 452; T.C.M. (RIA) 67095; May 3, 1967
Louis Morowitz, for the petitioners. Rudolph J. Korbel and Jay J. Lander, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1959 in the amount of $8,870.53 and an addition to tax under section 6651(a) of the Internal Revenue Code of 1954 for late filing of the return in the amount of $443.53. The issues for decision are: (1) Whether petitioners made a gift to a charitable foundation during the calendar year 1959 by transferring certain securities to that charitable foundation. (2) Whether there was reasonable cause for petitioners' failure to timely file their Federal income tax return for the calendar year 1959 or whether the late filing was due to willful neglect. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife residing at Blauvelt, New York at the date of the *167 filing of the petition in this case, filed their joint Federal income tax return for the calendar year 1959 which had been prepared in the office of Baird & Co. with the district director of internal revenue at New York, New York on May 3, 1960. Marion B. Neville (hereinafter referred to as petitioner when used in the singular) addressed, under date of April 12, 1960, a letter which was prepared on stationery of Baird & Co., 65 Broadway, New York 6, New York, to the District Director of Internal Revenue, 245 West Houston Street, New York, New York, stating that because of incomplete accounting data, she would be unable to complete a proper tax return for 1959 and therefore "respectfully request a ninety (90) days extension for filing the above mentioned return." Under date of April 25, 1960, a letter was addressed to Baird & Co., 65 Broadway, New York 6, New York, by the District Director of Internal Revenue for the Upper Manhattan District, New York, New York, acknowledging the request for an extension of time and stating, "We are unable to process your request for a filing extension for the reason checked below." The box checked in the form letter stated, "Your request is for more *168 than one taxpayer. A separate request is required for each taxpayer." Typed at the bottom of the letter was the statement, "Please furnish the information requested and return within 5 days with this letter attached." Petitioner is the daughter of David G. Baird. David G. Baird is an active partner in Baird & Co., and petitioner is a special partner. Petitioner has been a special partner in Baird & Co. since approximately 1950. Baird & Co. has offices in the same building with J. & W. Seligman & Co. (hereinafter referred to as Seligman). Seligman is a member of the New York Stock Exchange and the American Stock Exchange. Baird & Co. enters orders to buy and sell securities through the order room of Seligman. When a customer is introduced to Seligman by Baird & Co., Seligman acts for that company on the orders of Baird & Co. or David G. Baird as a partner of Baird & Co. in making purchases and sales of securities for that customer. Seligman advises the customers of such purchases on a form which it uses for that purpose, and, if requested, Seligman will hold securities in its name for the benefit of the customer, will remit the dividends with respect to the securities so held *169 to the customer, and will deliver the securities if requested to Baird & Co. or to the customer. During the years 1959 and 1960 and for a number of years prior thereto, petitioner had a securities account with Seligman. Most of the securities in this account were held in the name of Seligman. The purchases and sales of securities held in petitioner's account by Seligman were made on the direction of David G. Baird or Baird & Co. The name on the account in which the securities were held was "Marion B. Neville." David G. Baird or Baird & Co. deposited checks to petitioner's account and prepared petitioners' State and Federal income tax returns. When David G. Baird or another partner of Baird & Co. considered it necessary for papers to be signed by petitioner, the papers would be drafted by Baird & Co. and generally sent to petitioner by letter with the request that she sign and return them. David G. Baird talked with his daughter, petitioner, by telephone approximately four times a week and quite often saw her on weekends. If he thought any item sent to her for signature needed explanation, he would explain in a telephone conversation or when he saw her that the document was being *170 sent. Petitioner would always sign without question documents sent to her for signature by David G. Baird or Baird & Co., but sometimes would be dilatory in signing the paper and returning it, delaying such signing for a week or even a month. The partnership of Baird & Co. kept its books and filed its tax returns on a fiscal year ending May 31, and for the fiscal year ended May 31, 1959, filed a return showing petitioner's share of income credit and deductions of the partnership to be ordinary income of $77,019.15, payment to partners interest of $2,610, net short-term gain of $315.83, qualifying dividends of $915, contributions of $11,432.50, and net earnings self employment of $79,629.15. The David, Josephine & Winfield Baird Foundation, Inc., was an exempt organization for the year 1959, contributions to which were deductible as charitable contributions for income tax purposes. This foundation was started by David G. Baird in 1936 and from the time of its formation up to the time of the trial of this case David G. Baird was the manager of the foundation. On August 17, 1959, and August 26, 1959, there were transferred to Seligman certain securities belonging to petitioner, *171 which securities were transferred to and held in the "street" name of Seligman for petitioner. Included in these securities were 126 shares of Ayrshire Collieries Corporation common stock, 100 shares of Lehn & Fink Products Corporation common stock, and 116 shares of Woodley Petroleum Company common stock. On December 21, 1959, David G. Baird prepared or had prepared under his instructions for petitioner's signature a letter addressed to the David, Josephine & Winfield Baird Foundation, Inc., at 65 Broadway, which read: "Greetings: I am very pleased to make a donation to the Foundation of the following securities, having a market value of $11,340.54." There followed a listing of 100 shares of Woodley Petroleum Company, 100 shares of Lehn & Fink, and 53 shares of Ayrshire Collieries. David G. Baird retained a copy of the letter he prepared or had prepared in the file of Baird & Co. The files of the David, Josephine & Winfield Baird Foundation, Inc., were subpenaed by a Congressional Committee in 1963, and the day following the return of these records they were subpenaed by the Securities and Exchange Commission. At the date of the trial of this case these records had not been returned *172 to the Foundation or to David G. Baird as its manager. Under date of May 3, 1960, a letter on the stationery of David G. Baird, 65 Broadway, New York 6, New York, was addressed to J. & W. Seligman & Co., 65 Broadway, New York 6, New York, the body of which read: Will you please remove from the account of my daughter Mrs. Marion B. Neville, the following securities, and deliver them to me against my receipt: 100 shares
Woodley Petroleum Co.
100 shares
Lehn & Fink
53 shares
Ayrshire Colleries [Collieries] This letter was signed by David G. Baird. On May 26, 1960, Seligman physically delivered to David G. Baird 162 shares of Pure Oil Company common stock, 50 shares of Seven J. Stock Farm, Inc., common stock (the 116 shares of Woodley Petroleum stock had been exchanged for these stocks on May 10, 1960), and 100 shares of Lehn & Fink stock in response to the letter of May 3, 1960, and on that same date sent to petitioner a delivery ticket which stated: Delivered for account of Mrs. Marion B. Neville, R.F.D., Orangeburg, New York
This delivery ticket also bore the statement, "We are delivering to David Baird, for your account against receipt." On October 31, 1960, Seligman *173 physically delivered to David G. Baird 56 shares of Ayrshire Collieries Corporation common stock in response to the May 3, 1960 letter and similarly addressed a bookkeeper's posting ticket to petitioner stating in substance the same as the ticket addressed in connection with the May 26, 1960 delivery, except for the name of the stock. On June 20, 1960, a stock dividend of 6 shares of Ayrshire Collieries was credited on Seligman's records to petitioner's account and all dividends declared by Lehn & Fink with respect to the shares of that stock held by Seligman for petitioner's account from August 1959 to May 1960 were credited to petitioner's account. Similarly, all dividends declared by Woodley Petroleum with respect to the 116 shares held by Seligman in petitioner's account were credited to her account from August 18, 1959 to May 10, 1960, and all dividends declared by Pure Oil with respect to the 162 shares received in exchange for the Woodley Petroleum stock were credited to petitioner's account by Seligman from May 10, 1960 to May 26, 1960. All dividends declared by Ayrshire Collieries with respect to the 126 shares held by Seligman for petitioner's account which were increased *174 to 132 shares on June 20, 1960, were credited by Seligman to petitioner's account from August 18, 1959 to October 31, 1960. Thereafter, the dividends declared with respect to the 76 remaining shares were credited by Seligman to petitioner's account. It is the practice of Seligman, where securities are held by it for the benefit of a customer, to credit dividends declared to it as stockholder of record to the customer for whose account it is holding the stock. On July 12, 1960, Seligman received from either David G. Baird or Baird & Co., for the account of David, Josephine & Winfield Baird Foundation, Inc., the same 100 shares of Lehn & Fink stock, 162 shares of Pure Oil Company stock, and 50 shares of Seven J. Stock Farm, Inc., stock which had been delivered to David G. Baird by Seligman on May 26, 1960. On October 31, 1960, Seligman received for the account of the David, Josephine & Winfield Baird Foundation, Inc., from either David G. Baird or Baird & Co., the same 56 shares of Ayrshire Collieries Corporation stock which had been delivered to David G. Baird by Seligman on October 31, 1960. The securities held by Seligman in petitioner's name were beneficially owned by petitioner, *175 and neither David G. Baird nor Baird & Co. had any beneficial ownership of these securities. Seligman had no power of attorney or other written document from petitioner authorizing either David G. Baird or Baird & Co. to buy or sell or otherwise dispose of any stock held by Seligman for her account. Seligman would have honored any order received from petitioner with respect to disposition of the stocks held by Seligman in petitioner's account. W. D. Brome who was a partner in Baird & Co., who at times addressed letters to petitioner enclosing papers for her to sign and handled other matters with respect to her account on instructions from David G. Baird, was in ill health in late 1959 and for this reason was behind in handling the details of the work with which he was charged. Under date of September 15, 1960, a form 990-A "Return of Organization Exempt from Income Tax" prepared in the name of David, Josephine & Winfield Baird Foundation, Inc., 65 Broadway, New York, New York, was executed on behalf of the organization and filed on September 19, 1960, with the district director of internal revenue for the Manhattan District of New York. Included in this return was a schedule *176 of contributions received "Jan.-Dec. 1959" which listed, among other contributions, a contribution of $105,000 from Baird & Co. and a contribution of $11,340.50 from "Marion B. Neville." An inventory as of December 31, 1959, which was attached to the David, Josephine & Winfield Baird Foundation's retained copy of this return, form 990-A, listed among other stocks 53 shares of Ayrshire Collieries, 100 shares of Lehn-Fink Products Company, and 291 shares of Woodley Petroleum Company. The ledger sheet of the David, Josephine & Winfield Baird Foundation, Inc., for the month of December 1959 showed the following entries on the numbered lines and under the dates indicated, with a further notation beside the name and number of shares of stock showing whether the securities were purchased, donated, received, or sold: No. of
line of
ledger
Securities
sheet
Date
Purchased
Donated
1959
Dec.
1
28
2800 Alleghany Corp., 12 7/8
2
1100 Alleghany Corp., 12 7/8
3
29
2 AA Ogden Corp. Debs
5 '72 converted to
4
100 *Ogden Corp. Common
5
6/10 Ogden Corp. Common
6
800 Alleghany Corp., 12 7/8
7
30
4500 Alleghany Corp., 12 7/8
8
1500 Alleghany Corp., 12 3/4
9
100 Alleghany Corp., 12 7/8
10
31
Woodley Petroleum Co. (91)
11
4000 Alleghany Corp., 12 3/4
12
1000 Alleghany Corp., 12 7/8
13
30
Woodley Petroleum (100)
14
29
100 Atlas Utility & Investment
Co. Ltd. Canada
15
11,619 rts. Atlas Utility & Invest-
$8,066.66
ment Co. Ltd. Canada
16
22
200 Ekco Products Co., 45
$9,000.00
17
21
100 Woodley Petroleum Co., 45 5/8
4,562.50
18
100 Lehn & Fink Products, 54
5,400.00
19
53 Ayrshire Collieries
1,378.00
*177 No. of
line of
ledger
Donations
Securities
sheet
Made
Received
Sold
Dividend
1
$35,394.23
2
13,904.85
3
4
14.70
5
10,112.63
6
56,883.58
7
18,775.72
8
1,264.07
9
$11.37
10
50,068.58
11
12,640.78
12
12.50
13
14
15
16
Robert B. Baird
$9,000.00
17
Marion B. Neville
4,562.50
18
Marion B. Neville
5,400.00
19
Marion B. Neville
1,378.00 The items listed on line 16 under the date of "22" and the items listed on lines 17, 18, and 19 with the date "21" showing on line 17 give the appearance of being in a different handwriting from the other items on the page. Petitioners on their income tax return for the calendar year 1959 deducted $11,340 as a charitable contribution to the David, Josephine & Winfield Baird Foundation, Inc., and respondent disallowed this claimed deduction. Ultimate Facts 1. Petitioners have failed to establish that petitioner was presented with the letter drawn by David G. Baird or Baird & Co. under date of December 21, 1959, for signature, or if she was *178 presented with it that she signed it, or if she signed it what disposition was made of the letter after it was signed. 2. Petitioners have failed to show that they made a gift of 100 shares of Woodley Petroleum Company stock, 100 shares of Lehn & Fink Products Corporation, and 53 shares of Ayrshire Collieries Corporation stock to the David, Josephine & Winfield Baird Foundation, Inc., during the calendar year 1959. 3. Petitioners' failure to timely file their 1959 income tax return was due to reasonable cause and not to willful neglect. Opinion Section 170 provides that "there shall be allowed as a deduction any charitable contribution * * * payment of which is made within the taxable year. * * *" It is petitioner's position that she is entitled to a deduction in the calendar year 1959 of the value of 100 shares of Woodley Petroleum Company stock, 100 shares of Lehn & Fink Products Corporation stock, and 53 shares of Ayrshire Collieries Corporation stock under the provisions of this section. Petitioner recognizes that under respondent's regulations made pursuant to the specific provisions of section 170, for the gift of the stock to be effected, delivery to the donee must *179 have been made. [1] It is her contention that since her father, David G. Baird, was her agent with respect to handling stocks in her account with Seligman and was manager of the David, Josephine & Winfield Baird Foundation, Inc., it was unnecessary for delivery of the stock to be made to the Foundation or any actual transfer to be made out of her account either to David G. Baird or to the Foundation in order for delivery to be made since David G. Baird at any time had the power to make such delivery. *180 In support of this contention petitioner cites Edson v. Lucas, 40 F. 2d 398 (C.A. 8, 1930), reversing 11 B.T.A. 621 (1928); J. T. Hedrick, 24 B.T.A. 444 (1931); Alfred N. Hoffman, 47 T.C. 218 (1966); Smith v. Commissioner, 59 F. 2d 533 (C.A. 7, 1932); A. W. Mellon, 36 B.T.A. 977 (1937); Blanche S. Ross, 28 B.T.A. 39 (1933); and Beaumont v. Beaumont, 152 F. 55 (C.A. 3, 1907), all of which (except Alfred N. Hoffman, supra) involved questions of delivery of gifts under circumstances where the property given had not been placed in the physical possession of the donee, or if placed in the physical possession of the donee, had for some reason been returned to the donor. Some of these cases deal with the delivery of property to an agent of the donee and others with property held in a safe deposit box or on other premises belonging to the donor after some affirmative action of transfer had been taken such as a deed of gift being given to the donee ( A. W. Mellon, supra). Alfred N. Hoffman, supra, did not deal with a question of gift but with other *181 aspects of stock ownership where stock had been pledged as security for a debt. We do not consider it necessary to discuss in detail the factual situations involved in each of these cases since they all require, as do respondent's regulations, some form of evidence of the delivery of a gift sufficient to show that the gift has been placed beyond the control of the donor or the right of the donor legally to recall the subject matter of the gift. No action had been taken by petitioner in the calendar 1959 with respect to the stock involved. In her testimony she stated she did not even remember discussing these stocks, although she did remember some discussions of a gift in 1959. The evidence shows that on or about December 21, 1959, there had been prepared by or at the direction of David G. Baird a letter for petitioner's signature addressed to the David, Josephine & Winfield Baird Foundation, Inc., with respect to a gift of stocks, but there is no showing that petitioner ever saw the letter or even knew about it. There is no showing that she signed it in 1959 or at any other time and petitioner on brief makes no contention that the evidence does so show. The fact that David G. Baird *182 had this letter prepared shows that in late 1959 he was thinking of having his daughter make a gift to the David, Josephine & Winfield Baird Foundation, Inc., and that he considered it necessary for his daughter personally to take some affirmative action showing her intention to make such a gift in order for such a gift to be made. From the record, it is clear that petitioner considered that her father had complete authority to handle her account with Seligman for her and did not question his handling of it, but it is likewise clear that the stocks were petitioner's stocks and that irrespective of any agency relationship that might otherwise exist between petitioner and her father, David G. Baird, he did not consider it to include making a gift of her stock without obtaining her consent. The record also shows that Seligman viewed the stocks as petitioner's. They were held in her account with Seligman. Even though, because of petitioner's being a customer introduced to it by Baird and Co., Seligman would on the order of Baird & Co. or David G. Baird deliver the stocks to the drawer of the order against receipt, Slilgman would nevertheless directly notify petitioner of such delivery *183 in accordance with its usual procedures. At any time before the stocks were removed from her account with Seligman, petitioner could have removed them from that account on her own order and done with them as she pleased. Also, while the stocks were in petitioner's account with Seligman, David G. Baird could have removed them as her agent and disposed of them for her benefit. David G. Baird had not disposed of any right he had as petitioner's agent to legally obtain the stocks to be used for petitioner's benefit until those stocks were delivered to Seligman for the account of the David, Josephine & Winfield Baird Foundation, Inc. Since this action did not occur until sometime in 1960, we are not concerned in this case with whether such action by David G. Baird constituted delivery of the stocks by petitioner to the Foundation. There was no delivery of the stock to the Foundation in 1959 by anyone and therefore this requirement of the statute and respondent's regulations issued pursuant thereto has not been met. Jack Winston Londen, 45 T.C. 106 (1965). Petitioner recognizes that there was not physical removal of the stocks from petitioner's account and delivery to the *184 account of the Foundation in 1959, but contends that this is not necessary since David G. Baird had control of each account and when he decided that petitioner would give the stocks to the Foundation he ceased to hold them as her agent and began to hold them as manager of the Foundation. This contention is not supported by the facts of this case or by the law with respect to deductions of charitable contributions. Petitioner's stocks were not held by David G. Baird but were held by Seligman for petitioner's account. The senior partner of Seligman testified that Seligman would have honored any order of petitioner with respect to these stocks until they were removed from her account. Furthermore, even if the stocks had been held by David G. Baird, it would have been necessary that either petitioner, or at a minimum he as petitioner's agent, take some affirmative action to show that the stocks were given to the Foundation. The letter David G. Baird had drawn was not one purporting to show action on his part as petitioner's agent but was intended for petitioner's signature, but so far as the evidence shows she never signed it. In the instant case there is no showing that petitioner or *185 David G. Baird as her agent, took any action in 1959 that might have been viewed as an intention or pledge to make a gift to the Foundation. However, a pledge made or intention noted by petitioner would not be sufficient to constitute a gift without some form of "payment" of the amount in the taxable year, which in the case of stock means some form of delivery. Lewis C. Christensen, 40 T.C. 563 (1963). See also Norman Petty, 40 T.C. 521 (1963). The facts that we have set forth show that although David G. Baird had the thought that perhaps his daughter should make a gift to the Foundation in 1959, for some reason no action effecting the gift was taken until May 3, 1960, which is around the time that petitioner's income tax return for the calendar year 1959 was being prepared for filing. The letter of David G. Baird to Seligman was dated May 3, 1960. These dates suggest that at the time petitioner's income tax return for 1959 was being prepared, it came to the attention of David G. Baird that no step had been taken to effect the gift he thought his daughter should make to the Foundation. There is nothing in the record to suggest that any action was taken at *186 any earlier date. The entries on the ledger sheet of the Foundation must have been made after December 31, 1959, since they followed an entry made on that date, and since the entry is the last entry on the page it could have been made at any time, even after the year 1960. The return of income, form 990-A, of the Foundation was not filed until September 1960, so that any notations made in connection with that report could have been made after May 3, 1960. We therefore hold that petitioner has failed to show that she is entitled to a deduction in 1959 for a charitable contribution under the provisions of section 170 of the value of the 100 shares of Woodley Petroleum Company stock, 100 shares of Lehn & Fink Products Corporation stock, and 53 shares of Ayreshire Collieries Corporation stock, which were transferred to the account of the Foundation with Seligman in 1960. Petitioner applied for an extension of time for filing her 1959 Federal income tax return and filed her completed return shortly after a letter allowing time to send in additional information was received. There is no distinction in the factual situation in the instant case and that in Philad Co. of Delaware, 47 B.T.A. 565 (1942), *187 in which we held that there existed reasonable cause for failure to file a timely return. On the basis of the Philad Co. of Delaware case, we hold that petitioner's failure to timely file her income tax return for the calendar year 1959 was due to reasonable cause and not to willful neglect. Decision will be entered under Rule 50. Footnotes
*. The figure 100 has a line drawn through it and 102 6/10 is written in above it.↩
1. Sec. 1.170 (Income Tax Regs.) Statutory provisions; charitable, etc., contributions and gifts. Sec. 170. Charitable, etc., contributions and gifts - (a) Allowance of deduction - (1) General rule. There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * *
(b) Limitations - (1) Individuals. In the case of an individual the deduction provided in subsection (a) shall be limited as provided in subparagraphs (A), (B), (C), and (D). (A) Special rule. Any charitable contribution to - (i) A church or a convention or association of churches, (ii) An educational organization referred to in section 503(b)(2), or (iii) A hospital referred to in section 503(b)(5), or to a medical research organization (referred to in section 503(b)(5)) directly engaged in the continuous active conduct of medical research in conjunction with a hospital, if during the calendar year in which the contribution is made such organization is committed to spend such contributions for such research before January 1 of the fifth calendar year which begins after the date such contribution is made, * * *
shall be allowed to the extent that the aggregate of such contributions does not exceed 10 percent of the taxpayer's adjusted gross income computed without regard to any net operating loss carryback to the taxable year under section 172.↩